**Adolf LONY, Appellant,**

v.

**E.I. DU PONT de NEMOURS & COMPANY, Appellee.**

No. 90–3522.

United States Court of Appeals, Third Circuit.

Argued Nov. 6, 1990.

Decided June 7, 1991.

---

**606**

Paul F. Doyle (argued), Alan R. Kusinitz, Steven E. Bizar, Kelley, Drye & Warren, New York City, Richard K. Herrmann, Bayard, Handelman & Murdoch, P.A., Wilmington, Del., for appellant.

William H. Sudell, Jr. (argued), Donald F. Parsons, Jr., Luke W. Mette, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for appellee.

Before SLOVITER, Chief Judge[*], SCIRICA and ALITO, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

This case comes before us for a second time on Adolf Lony's appeal of a district court order dismissing its complaint against E.I. Du Pont de Nemours & Co. (Du Pont) on the basis of *forum non conveniens*. We vacated an earlier order of the district court that dismissed the action on the same basis and remanded for further proceedings in light of our opinion. *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628 (3d Cir.1989) (*Lony I*). On remand, after the parties had conducted substantial merits discovery, after the court had set a trial date, and after Du Pont made a concession which could have a significant bearing on its liability, Du Pont renewed its motion to dismiss on the basis of *forum non conveniens*, predicated in part on additional evidence. Over the objection of Lony that the remand neither contemplated nor permitted that procedure, the district court revisited the issue and

again concluded that the action should be dismissed on *forum non conveniens* grounds.

## I.

### *Facts and Procedural History*

Our opinion in *Lony I* contains a thorough review of the facts leading to this action, so we will only briefly summarize the relevant facts as well as events that occurred subsequent to our earlier opinion. Appellant Adolf Lony is a sole proprietorship based in the Federal Republic of Germany. It buys cellophane from manufacturers such as Du Pont and Wolff Walsrode AG (a German corporation not a party here) and processes it for sale as food wrappings. Du Pont is a Delaware corporation with its principal place of business in that state. At the time it did business with Lony, Du Pont manufactured cellophane at a plant in Kansas that it has since sold to a nonparty, Flexel, Inc.

In 1985, Lony bought cellophane from Du Pont, processed it into candy wrappers, and sold it to its largest customer, Haribo, a German corporation. Haribo sought assurances that the cellophane did not contain diethylene glycol (DEG), a toxic chemical about which there had been a recent public health scare in Europe. Lony sought confirmation from Du Pont, as well as from its other supplier, Wolff, that the cellophane it purchased contained no DEG. Du Pont told its distributor, Transparent Paper Ltd., from whom Lony purchased the Du Pont product, that the cellophane contained no DEG.

The key representation at issue in this case is the following statement in a letter of October 17, 1985 by William Percival of the Regulatory Affairs Group of Du Pont's Polymer Products Department to Transparent:

> In response to your question to W. Pierce, I am informing you that there is no diethylene glycol in any type of Du Pont Company Cellophane Film handled by your Company.

[*] The Honorable Dolores K. Sloviter became Chief Judge on February 1, 1991.

I trust this provides the assurance you were seeking.

App. at 786. Transparent transmitted the response to Lony, which alleges that in reliance on this representation it shipped the wrappers to Haribo. Haribo later tested the cellophane it received from Lony, found traces of DEG, and cancelled its contracts with Lony. Lony claims it suffered substantial losses.

Lony brought this action in June 1988 in the district of Delaware against Du Pont, alleging tortious misrepresentation, common law fraud, statutory fraud, breach of warranty, and breach of fiduciary duty. Simultaneously with its answer, Du Pont filed a motion to dismiss the case on *forum non conveniens* grounds. After discovery limited to that issue, the court granted the motion to dismiss subject to several conditions imposed upon Du Pont that were designed to ensure Lony could institute the action in Germany. On appeal by Lony, this court vacated the dismissal order, concluding that the district court had made legal errors in assessing how the balance of private interest components of the *forum non conveniens* analysis affected the dismissal of the action, and that it abused its discretion both in assessing the public interest factors and in failing to give adequate consideration to the amount of deference due to Lony's choice of forum. *Lony I*, 886 F.2d at 634, 643–44.

On remand, the district court set a trial date and allowed merits discovery to proceed with a deadline of November 1990. Du Pont renewed its motion to dismiss. After extensive discovery proceedings from December 1989 through April 1990, the district court, in response to a motion by Du Pont, allowed both parties to submit additional evidence relevant to the *forum non conveniens* analysis. The court then heard oral argument and again dismissed Lony's complaint on *forum non conveniens* grounds, once more contingent on several conditions to which Du Pont agreed. One of these conditions was that Du Pont would stipulate to one of the significant facts it had earlier vigorously denied: that the cellophane it sold to Lony contained "small amounts" of DEG. Du Pont further stipu-

lated that it would make available documents, witnesses and other evidence from its former cellophane plant that are now in control of Flexel, Inc. It based that stipulation on a letter it received from Flexel's attorney promising that Flexel would "make reasonably available to both Du Pont and Lony relevant Flexel witnesses and documents." App. at 1354.

■ Lony now appeals. We have jurisdiction under 28 U.S.C. § 1291 (1988). Our scope of review is limited because a *"forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981); *see also Lony I*, 886 F.2d at 631.

## II.

### Discussion

### A.

Lony initially argues that the district court improperly ignored both the letter and spirit of this court's mandate when it permitted Du Pont to reopen the record with respect to the *forum non conveniens* issue more than four months after the remand and after substantial merits discovery was underway. Lony argues that because this court "reversed" for legal errors rather than factual deficiencies, the district court was not free to reopen the issue or, at the very least, should not have considered matters that were in or could have been in the record at the time of its original consideration of this issue.

We note at the outset that this court did not reverse the district court's order but instead vacated that order and remanded for further consideration in light of our opinion. Although there may have been some expectation by this court at the time of its opinion that the district court's reconsideration would be on the basis of the factors and evidence then before it, that was never made explicit in our opinion. We have carefully reviewed our opinion in *Lony I* and see no indication that we limit-

ed the district court to the then existent record. Thus, we cannot agree with Lony that the district court's decision to revisit the issue based on allegedly new evidence was a violation of the mandate.

We do not suggest that the appropriateness of dismissal on *forum non conveniens* grounds is or should be an open issue throughout the proceedings in the district court. While there may be some issues which fall within that category, *see e.g.*, Fed.R.Civ.P. 23(c)(1) (explicitly providing that an order on the maintenance of a class action "may be conditional, and may be altered or amended before the decision on the merits"), the interests of judicial expediency require that there must come an end to litigation on the *forum non conveniens* issue, particularly when there has been substantial activity with regard to the merits of the dispute. Nonetheless, we are not prepared to enunciate a rule precluding the district court from reconsidering the issue on an expanded record in all circumstances, although we assume that such reconsideration will be limited to exceptional circumstances. In any event, because we believe that the extent of the activities on the merits already undertaken in the district court is a significant factor which must be considered in addition to the balancing of the public and private interest factors, Lony's objections in this regard will be taken up hereafter.

### B.

This case is puzzling in that frequently the *forum non conveniens* issue is raised by a defendant sued away from home who seeks to convince the court that the balance of relevant factors should be tipped against requiring it to defend in a forum far from its home jurisdiction. *See, e.g., Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir.1984), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). Here, in contrast, Du Pont, which is headquartered in Wilmington, Delaware, and is the largest employer in that state, seeks to move the action against it to a forum more

than 3,000 miles away. It is, as Alice said, "curiouser and curiouser." *Cf. Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 510, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (referring to plaintiff who objected to suit in his home community as making a "strange argument").

Our earlier opinion adheres to the jurisprudence of the doctrine of *forum non conveniens* laid out by the Supreme Court, principally in *Gilbert* and *Piper*. The parties agree that the district court has jurisdiction, that venue is proper, and that there exists an adequate alternative forum in Germany, the plaintiff's home country. Accordingly, we must determine whether the district court (1) abused its discretion in "fail[ing] to consider adequately and to determine the amount of deference due the foreign plaintiff's choice of forum" or (2) "clearly err[ed] in weighing the factors to be considered." *Lony I*, 886 F.2d at 632.

### C.

#### 1. *Deference to Plaintiff's Choice of Forum*

Lony argues that following the remand, the district court once again gave insufficient deference to the plaintiff's choice of forum when it found that "Lony's choice of forum is due considerably less deference than a domestic plaintiff's choice of forum." Memorandum Opinion at 16. In *Lony I*, we found an abuse of discretion because the district court failed to give adequate consideration to the evidentiary basis for according plaintiff's choice of forum "full deference." 886 F.2d at 634.

When a plaintiff brings an action in a court with jurisdiction, such as here, "a plaintiff's choice of forum should rarely be disturbed." *Piper*, 454 U.S. at 241, 102 S.Ct. at 258. A court may exercise its discretion to dismiss a case only when trial of the action would " 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to a plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.' " *Id.* (quoting *Koster*, 330

U.S. at 524, 67 S.Ct. at 831). Therefore, the defendant bears the burden of persuasion on all elements of the *forum non conveniens* analysis. *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3d Cir.1988) (*Lacey I*).

■ A plaintiff's choice of forum is normally due considerable deference, although a foreign plaintiff's choice may deserve less deference because it may be less reasonable to assume that a venue which is not the plaintiff's home forum is convenient. *Piper*, 454 U.S. at 255–56, 102 S.Ct. at 265–66; *Lony I*, 886 F.2d at 633–34. Still, that reduced deference "is 'not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for forum non conveniens is the exception rather than the rule.' " *Lacey I*, 862 F.2d at 45–46 (quoting *In re Air Crash Disaster*, 821 F.2d 1147, 1164 n. 26 (5th Cir.1987)) (emphasis added in *Lacey I*); *see also* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3828, at 291–92 (1986) ("The burden on a defendant moving to dismiss in favor of a foreign court ... is a strong one.").

■ We recently had occasion to review our precedent on this issue and agreed with the district court's statement in that case, which also involved a foreign plaintiff, that defendants must establish "a strong preponderance in favor of dismissal." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 179 (*Lacey II*). In its memorandum opinion under review here, the district court accorded Lony's choice of forum considerably less deference than a domestic plaintiff's choice of forum because of what the court believed was a change in the balance of convenience. Even if we were to accept the court's convenience analysis, we would be obliged to give the plaintiff's choice *some* weight, with the defendant retaining the burden of overcoming the presumption that plaintiff's choice should govern.

However, because, as we explain below, we cannot accept the district court's analysis of the convenience issue, it follows that the district court underestimated the amount of deference due Lony's choice of forum. In light of the deference owing to the plaintiff's choice, "[t]he moving defendant must show that ... the private and public interest factors weigh heavily on the side of dismissal." *Lacey I*, 862 F.2d at 44.

### 2. *Private Interest Factors*

In *Lony I*, this court held that when the private interest factors are "at equipoise (or tipped toward the defendant)," the district court "should have concluded that they weighed in favor of retaining jurisdiction, not that they tipped 'toward dismissal.' " 886 F.2d at 635.

The relevant private interest factors include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843.

We do not propose to repeat the meticulous review of these factors undertaken in *Lony I* which led us to conclude that important evidence relevant to claims and defenses is located in each forum and that the Hague Convention procedures assure that some evidence from each forum will be available in the other. *See Société Nationale Industrielle Aérospatiale v. United States District Court*, 482 U.S. 522, 541, 107 S.Ct. 2542, 2554, 96 L.Ed.2d 461 (1987) (noting Hague Convention procedures "are available whenever they will facilitate the gathering of evidence" by authorized means). As we said in *Lony I*, "[w]hile we might find the balance of private interest factors tipped slightly in favor of the plaintiff, the district court's finding that the balance of private interest factors is either at equipoise or tipped toward the defendant is not an abuse of discretion." 886 F.2d at 640.

In its renewed consideration of the dismissal issue, the district court concluded that the balance of convenience has swung in favor of trial in Germany. The court

based this conclusion primarily on two new matters raised by Du Pont. One was Du Pont's concession, first made in the affidavit accompanying its renewed motion to dismiss, that "the use of [PEG] in the manufacture of ... cellophane ... would result in small amounts of [DEG] in [Du Pont's type K160–DB23] cellophane." App. at 1351. This concession assumed critical importance in the district court's view because it purportedly eliminated one of the two key liability issues in the case, which had been previously characterized as whether "DEG [is] present in cellophane manufactured using PEG300 as a raw material ... [and,] [i]f so, did DuPont know or should it have known this?" *Lony I*, 886 F.2d at 635.

As to the second liability issue, Du Pont's knowledge at the time of the alleged misrepresentations, the court believed that the undertaking by Du Pont to make available to Lony at Du Pont's expense the witnesses and documents of Du Pont and Flexel cured any "slight inconvenience" that Lony would suffer from not having access to Flexel's material. Thus, the district court concluded that Lony's showing of convenience is now considerably diluted.

At the outset we agree that it would certainly be convenient for Du Pont to try the issues concerning causation and damages in Germany. As the district court found, evidence concerning what Haribo required of Lony, why Haribo terminated Lony as a supplier, tests conducted by Haribo on its cellophane, and damages all reside in Germany. Du Pont also argues that the fact that Lony defended an action in Germany by Wolff for money due by contending that the DEG in its cellophane caused Haribo to stop dealing with Lony supports the necessity of suit in Germany. The district court reasoned that "[w]hether Haribo would have terminated Lony, absent Wolff's contaminated cellophane, is now an urgent question," the answer to which "lies in Germany." Memorandum Opinion at 18–19.

Neither party contests the fact that Wolff could not be compulsorily joined in German court. Therefore, even if Lony's accusation that Wolff was "responsible" for its losses with Haribo were to be viewed as something more than alternative and inconsistent pleadings which could be used to cross-examine Lony, there is no significant advantage to a German forum over an American one in regards to Wolff, which is not likely to submit voluntarily to suit in Germany or elsewhere.

As noted above, we agree with the district court that access to Haribo is a consideration which weighs in Du Pont's favor, even though we noted in our earlier opinion that German courts have indicated they will execute letters rogatory to the extent discovery would be permissible in their courts. *Lony I*, 886 F.2d at 639. Thus, were damages and causation the principal remaining issues to be tried in this case, there would be less reason to disturb the district court's balancing of the private interest factors.

However, the district court's analysis presupposes that very little remains on the liability issue. It is clear from Du Pont's position in this court that liability remains a hotly contested issue.

As Du Pont explains in its brief, the stipulations that the use of PEG–300 in the relevant type of cellophane would result in small amounts of DEG in that cellophane "was without prejudice ... to Du Pont's continued denial that the cellophane would have contained more than the maximum amount of DEG permitted by [U.S.] and West German law. In fact, Du Pont contends it would have contained substantially less." Brief of Appellee at 6 n. 8. Although Lony's complaint is predicated on the alleged misrepresentation that the cellophane contained no DEG and that therefore the applicable United States and West German regulations are irrelevant, it is apparent that Du Pont will continue to vigorously contest liability based on the insignificance of the amount of DEG.[1] We also

1. We noted in *Lony I* that if Lony "established that Du Pont's cellophane as manufactured contained DEG, then Du Pont's search for outside

sources in Europe that increased the level of contamination has more the appearance of a fishing expedition than of an effort to locate

note in passing that to the extent Du Pont's concession reduces Lony's need for certain evidence in the United States, it is offset by eliminating Du Pont's previously assessed need for evidence in Germany on possible outside sources of contamination of the wrappers. *See Lony I*, 886 F.2d at 637.

Nor do we believe that the significance of the remaining liability issue can be discounted. Du Pont's brief makes clear that "the stipulation did not affect Du Pont's right to continue to deny that Du Pont knew or had reason to know of the presence of DEG impurities in [its cellophane] at any time relevant to Lony's claims." Brief of Appellee at 6 n. 8. The evidence relevant to this defense, which we must assume will also be vigorously asserted, remains exclusively in the United States. Lony notes that Du Pont's Polymer Products Library and its Lavoisier Library at Experimental Station, which are both in Delaware, contain numerous books on glycols and softeners, that it maintains copies of studies and research files in Wilmington, and that, of course, its employees, management, and nerve center are all there. Even more significant is the fact that many of the witnesses who would be called on the issue are retired employees of Du Pont or Flexel whose presence in Germany cannot be assured by either. If they are indeed unavailable there, the trier of fact will be unable to judge their credibility on the central issue of Du Pont's knowledge. They are more likely to be available for live testimony in this country.

Lony also has enlarged the record on the *forum non conveniens* issue, and it now claims that it has identified 17 additional witnesses on the issue of Du Pont's knowledge of DEG. It refers in particular to evidence that Lony's was not an isolated query, but that other customers raised the same issue regarding DEG, and the manner of response was decided in Wilmington with some customers being given representations more forthcoming than others. This information in Wilmington is in addi-

tion to whatever information or knowledge can be gleaned from the Tecumsah, Kansas plant, now under Flexel's control. As we stated in *Lony I*, "Lony should be able to put forth whatever evidence it can as to the extent of Du Pont's alleged knowledge, and should not be limited to proving what someone in Du Pont's Wilmington headquarters knew or should have known." *Id.*

Thus, although we cannot say that Du Pont's concession as to the presence of DEG is not significant in the requisite balancing of private interest factors, neither can we fairly accord it the dispositive weight given it by the district court.

Nor can we agree with the district court that the letter from Flexel's counsel, obtained by Du Pont, promising to make documents and witnesses "reasonably available to both Du Pont and Lony," App. at 1354, tips the balance. In *Lacey II*, we emphasized the significance of "the barriers to obtaining access to essential sources of proof in the foreign forum," noting that they may be "so severe as to render that forum (practically speaking) an inadequate alternative." *Lacey II*, at 182. Clearly, Lony would have ample means in this country for securing access to Flexel's documents and witnesses, including the possible use of videotaped depositions at trial. On the other hand, Flexel is not a party to this litigation, and a German court would have no power to enforce a letter from Flexel's counsel to Du Pont's counsel promising to make evidence available. Flexel's letter does not even constitute an enforceable obligation to a United States court and is dependent upon Flexel's interpretation of "reasonably available." It never even says it will send its witnesses to Germany, albeit at Du Pont's expense, or even that the retired witnesses remain in its control. Should the evidence Flexel decides to make available turn out to be less than Lony could have obtained in an American forum, Lony's only recourse would be to reinstitute this action in Delaware, a grossly inefficient alternative once it has been dismissed here and commenced in Germany.

essential evidence." 886 F.2d at 637 n. 5. Inasmuch as that fact has been established by Du

Pont's concession, Du Pont no longer needs that evidence on the liability issue.

The uncertainty of document availability through Flexel takes on added significance in light of the conclusion in our earlier opinion that a wider range of documents in the United States would be available if the trial were held here than could be obtained in Germany through the Hague Convention. *Lony I*, 886 F.2d at 639. In that connection, we note the significance placed in *Lacey II* on the fact that defendant had transferred to a nonparty evidence possibly critical to plaintiff's allegations and it was unclear whether plaintiff would have access to that evidence in the foreign forum. *Lacey II*, at 184–86.

For the reasons we noted above, we are unpersuaded that either Du Pont's concession or Flexel's unenforceable representation support the district court's conclusion that "Du Pont has established ... oppressiveness and vexation out of all proportion to Lony's convenience." Memorandum Opinion at 20. While Du Pont's need for evidence from Haribo is substantial, Lony continues to have a significant need for witnesses on the issue of Du Pont's knowledge of the presence of DEG. Therefore, we cannot agree with the district court that the "oppressiveness" Du Pont faces is "out of all proportion" with Lony's situation.

In our prior opinion, we held that the district court did not abuse its discretion in concluding that the private interest factors were "either at equipoise or tipped toward the defendant." *Lony I*, 886 F.2d at 640. In this case, had Du Pont stipulated to liability, as the district court appeared to treat Du Pont's concession, Germany would likely be the more convenient forum on the remaining issues. Du Pont's stipulation on merely one aspect of the liability issue is the only significant new development affecting that balance. We find that although the private interest factors may now tip somewhat more toward trial in Germany due to Du Pont's recent concessions, that tilt is not as overwhelming as the district court found. Because of our conclusions on other aspects of this issue, we need not quantify these factors further.

3. *Public Interest Factors*

The Supreme Court has listed the public interest factors to be considered in the *forum non conveniens* balancing as including:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6. We have held that the district court must also " 'consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum.' " *Lacey I*, 862 F.2d at 48 (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528, 108 S.Ct. 1945, 1952, 100 L.Ed.2d 517 (1988)).

In *Lony I*, we concluded that both Delaware and Germany have substantial contacts to this litigation, and therefore "the contest is a close one and we cannot say that the district court abused its discretion in finding that the more important connection was with Germany." 886 F.2d at 641. Similarly, while we concluded that each forum had a similar interest in enforcing the law and guarding against wrongful business practices, and that the district court's consideration of Germany's interest in protecting citizens from unsafe products in this case was flawed, we held that district court's conclusion that Germany has a stronger interest in the case was not an abuse of discretion. *Id.* at 642. However, on the choice of law factor, we concluded that the district court erred in ignoring Lony's claims under Delaware law, a factor that weighs in favor of retaining jurisdiction. Therefore, we held the court abused its discretion in concluding that the public interest factors "strongly favor dismissal." *Id.* at 643.

On remand, the district court stated that its earlier conclusions about Germany's in-

terest and nexus with this case were strengthened by additional evidence that a German official had intervened with Haribo on behalf of Lony because termination of its contracts with Lony could cause unemployment in an economically poor area. The only additional consideration cited by the district court was its own "congested docket" caused by a vacant judgeship, and the court asserted that because "Lony's dispute with Wolff ... [was] resolved with enviable dispatch" by German courts, "[c]ertainly Lony's claim could be addressed without undue delay in Germany." Memorandum Opinion at 23. The court concluded that "[t]he public interest factors also weigh in favor of dismissal, though not as strongly" as the private factors. *Id.* at 25.

As Lony correctly noted in its brief, and as Du Pont's counsel conceded at argument, the district court offered no comparative data or analysis of the relative congestion of German and Delaware courts. Furthermore, Wolff's suit against Lony was different from the one at bar; Wolff sued Lony for unpaid invoices, nonpayment of which Lony did not dispute. Here, by contrast, the issues are fraud, misrepresentation, and breach of duty, all of which Du Pont denies. There is no evidence that if this case were brought in Germany, it would be handled in the same court as the Wolff litigation, nor that it would be disposed of in a comparable period of time. Thus, there is no basis on this record to consider comparative court congestion as a factor weighing toward dismissal.

Therefore, while the consideration of each jurisdiction's contacts with and interest in this litigation favors dismissal, the choice of law factor continues to favor retention of jurisdiction. The question is a close one, and even if once again the balance tilts toward dismissal, it is clear that Du Pont has not carried its "heavy burden" to prove that Lony's choice of a forum with proper jurisdiction must be rejected in favor of a German court.

### 4. *Effect of Extensive Merits Activity*

Although we conclude that the district court failed to give plaintiff's choice of forum some weight, that the tilt of private interest factors toward trial in Germany is not as overwhelming as the district court found, and that the public interest factors' tilt toward dismissal is not enough to meet Du Pont's heavy burden when balanced against the deference due plaintiff's choice, we would be unlikely to disturb the district court's order given the discretionary nature of its decision were it not for one overriding factor: the court's failure to consider the extent of merits activity already completed and underway in Delaware.

The facts that two years have elapsed since the case was filed, there has previously been limited discovery on the *forum non conveniens* motion, and this was followed after remand by merits discovery for nearly six months present a novel question that does not fit easily into established criteria. This consideration goes to both private concerns, because of the parties' investment in time and money in discovery, and public ones, because the district court and court personnel already have expended resources in connection with this litigation.

In the parties' briefs in the district court outlining the additional evidence they sought to rely on at the second *forum non conveniens* hearing, Du Pont cited more than sixty exhibits and Lony listed over seventy. *See* App. at 1426–1645, 2836–3277. Du Pont stated at the district court hearing that "[t]here have been document productions by both sides of several thousand pages," App. at 3281, as well as exchanges of interrogatories and the depositions of at least five witnesses to that point in the merits discovery. Additionally, a large number of the documents were produced in German, and Du Pont has translated a substantial number. App. at 1411, 1421. A graphic example of the effect on the merits discovery of the second order dismissing the case was provided at oral argument by Lony's counsel who stated that Adolf Lony had come from Germany for his deposition by Du Pont, but on receipt of the court's order on the second day of the deposition, Du Pont declined to proceed further.

Moreover, we cannot overlook as a highly significant factor the district court's familiarity with the litigation. Had the district court proceeded with the litigation under the time schedule it had established, which called for a discovery deadline of November 30, 1990 and a trial date of April 8, 1991, the matter would be concluded by now. Instead, we have a second appeal focused once again on a preliminary issue.

We do not suggest that Du Pont did not timely assert its *forum non conveniens* claim, either initially or following remand. *Cf. In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1165 (5th Cir.1987) (defendant must assert a motion "within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known"), *cert. denied sub nom., Crowley Maritime Corp. v. Zipfel*, 487 U.S. 1245, 109 S.Ct. 2, 101 L.Ed.2d 954 (1988). Thus, the question is not one of fault but one of expedition. Once the litigation has progressed significantly in the federal court, a different factor enters into the equation, one not previously considered by the Supreme Court in its jurisprudence because it does not appear to have been present in those cases before it.

The *forum non conveniens* doctrine is grounded in concern for the costs that must be expended in litigation and the convenience of the parties. *See In re Air Crash*, 821 F.2d at 1165. Had the district court denied the motion to dismiss, that order could not have been appealed. *See Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989). Similar considerations of judicial efficiency and expediency counsel that the extent of discovery on the merits already completed must be weighed in favor of retention of jurisdiction in the forum. Otherwise we may be faced with the situation presented here, where allegedly new facts uncovered in discovery are used to initiate reconsideration of what should be a preliminary motion.

In *Piper*, the Supreme Court expressly eschewed the need for extensive fact investigation in connection with a *forum non conveniens* motion. 454 U.S. at 258–59, 102 S.Ct. at 267. Its decision contemplated merely limited discovery before the disposition of a *forum non conveniens* motion, reflecting both the preliminary nature of the question and counterproductivity of substantial discovery before dismissing an action so that it can be reinstituted elsewhere.

■ Motions to dismiss based on *forum non conveniens* usually should be decided at an early stage in the litigation, so that the parties will not waste resources on discovery and trial preparation in a forum that will later decline to exercise its jurisdiction over the case. We are aware that in assessing a *forum non conveniens* motion, "the district court generally becomes entangled in the merits of the underlying dispute" and "must scrutinize the substance of the dispute." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528, 108 S.Ct. 1945, 1952, 100 L.Ed.2d 517 (1988). However, "the district court's inquiry does not necessarily require extensive investigation, and may be resolved on affidavits presented by the parties," *id.* at 529, 108 S.Ct. at 1953, and "does not call for a detailed development of the entire case." *Lacey I*, 862 F.2d at 45.

■ Therefore, we hold today that whenever discovery in a case has proceeded substantially so that the parties already have invested much of the time and resources they will expend before trial, the presumption against dismissal on the grounds of *forum non conveniens* greatly increases.[2] Although we do not fault the district court for its failure to consider this factor, because the issue had not arisen previously in the jurisprudence of either the Supreme Court or this court, nonetheless the failure to take the extensive merits discovery into

**2.** Our decision in *Lacey II* is not to the contrary. Although we were confronted there, as here, with a second appeal of a *forum non conveniens* dismissal, and remanded the case for additional consideration, in that case no discovery at all had taken place even by the time of the second appeal; in fact, the defendants had not yet answered plaintiff's complaint.

account markedly skews the balancing it conducted.

### D.

In this case, the balance of other private and public interest factors, accepting that they tilt toward trial in Germany, are not sufficient to overcome the strong ground for retention of jurisdiction in Delaware in light of the substantial merits discovery already underway. Although the balance of both private and public interest factors is relatively close, and each party needs some evidence that is most available only in its preferred forum, neither forum is likely to put one party at a gross disadvantage. As we noted in *Lacey II*, the assessment of *forum non conveniens* factors is a qualitative rather than a quantitative assessment; if one consideration strongly points toward retention of jurisdiction and several weakly favor dismissal, the former may outweigh the latter. *Lacey II*, at 182.

Moreover, we note that in this case, the central concern of the *forum non conveniens* doctrine is not implicated. The Supreme Court has explained that the primary danger against which the doctrine guards is the plaintiff's "temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself," so that he can " 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." *Gilbert*, 330 U.S. at 507, 508, 67 S.Ct. at 842, 843.

Accordingly, we conclude once again that in light of the balance of private and public interest factors as we have outlined above, in addition to the extent of merits proceedings already underway, the district court abused its discretion in dismissing Lony's complaint on the grounds of *forum non conveniens*.

We see no reason to prolong litigation on this issue. Our mandate will be specific. We will reverse the order dismissing the action and remand so that discovery and

trial can proceed. We recognize, however, that the presumption against dismissal based on the extent of the merits activity already undertaken in this case in the Delaware forum could be rebutted were causation and damages the only issues remaining to be tried because the district court reasonably held that it would be more convenient to try those issues in Germany. Thus, were Du Pont to determine that a concession on the remaining liability issues was in its interest, our mandate will provide for that eventuality by stating that the district court may re-enter its order dismissing on *forum non conveniens* grounds if Du Pont, within 30 days of the remand, makes a further concession which eliminates liability as a relevant issue.[3]

### IV.

#### *Sanctions*

Lony also appeals from the district court's order denying its motion to impose sanctions on Du Pont under Fed.R.Civ.P. 11. We review all aspects of the district court's Rule 11 decision for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990); *Schering Corp. v. Vitarine Pharmaceuticals, Inc.*, 889 F.2d 490, 496 (3d Cir.1989).

Rule 11 provides in part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading ...; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact ..., and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading ... is signed in violation of this rule, the court

---

**3.** Because the case has advanced so substantially on the merits, Judge Scirica would reverse and remand so that discovery and trial can

proceed, without permitting reconsideration of the motion to dismiss on *forum non conveniens* grounds.

... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction. . . .

The Supreme Court has concluded that Rule 11 "imposes on any party who signs a pleading ... an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." *Business Guides, Inc. v. Chromatic Communications Enter.,* — U.S. ——, 111 S.Ct. 922, 933, 112 L.Ed.2d 1140 (1991). The Court held that "Rule 11 imposes an objective standard of reasonable inquiry on represented parties who sign papers or pleadings." *Id.* 111 S.Ct. at 934–35. The rule "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact. . . ." *Cooter & Gell,* 110 S.Ct. at 2454.

That standard is well established in this circuit. In *Lieb v. Topstone Indus.,* 788 F.2d 151, 157 (3d Cir.1986), we noted that the Rule 11 test "is now an objective one of reasonableness" and seeks to discourage pleadings "without factual foundation, even though the paper was not filed in subjective bad faith." Rule 11 also seeks to ensure a pleading is not used for "an improper purpose, such as to cause harassment, undue delay, or needless increase in litigation expense." *Id.; see also Business Guides,* 111 S.Ct. at 934 (the "main objective" of Rule 11 is "to deter baseless filings and curb abuses"). Obviously, the rule was designed to be equally applicable to defendants and to plaintiffs.

■ Lony contended sanctions were warranted because Du Pont (1) pursued its *forum non conveniens* motion in an attempt to harass and impose costs on Lony and (2) denied a key fact relevant to liability which it admitted only belatedly. Lony's first allegation, standing alone, is without merit. As we noted earlier, Du Pont had a right to move for *forum non conveniens* dismissal, and nothing precluded a renewal of its motion to dismiss on that ground. Nor do we, using an objective standard, regard its motions as harassment. Du

Pont's arguments presented close questions, as the two appeals on this issue demonstrate.

■ Lony's second basis for sanctions is more substantial. For the first eighteen months of this litigation, Du Pont flatly denied the following two allegations in Lony's complaint:

9. Cellophane produced by Du Pont, including type K160–DB23, contains DEG, and at all relevant times, Du Pont was aware of this fact.

10. When polyethylene glycol is used as a softener and plasticizer in cellophane production, the resulting cellophane will contain DEG. At all relevant times, Du Pont was aware of this fact.

App. at 7–8, 30. Du Pont's answer, signed by counsel, simply denied these allegations, a position Du Pont maintained in the first appeal. *See Lony I,* 886 F.2d at 636 ("Du Pont denies that the use of PEG as a raw material caused DEG to be present in its cellophane").

Then, in December 1989, when this case was on remand from our prior decision, Du Pont for the first time offered to stipulate that it will not dispute Lony's allegations that the use of PEG in the manufacture of Du Pont cellophane type K160–DB23 would result in small amounts of DEG in the cellophane. App. at 1351. Du Pont offered no explanation for this belated admission.

The district court gave only cursory consideration to Lony's motion under Rule 11. It first noted that it was "reluctant to sanction any party for conceding a key liability issue" that "simplifies this case," and it then reasoned that any bad faith by Du Pont on this point would be "illogical" because an earlier admission would have strengthened Du Pont's initial *forum non conveniens* motion. Memorandum Opinion at 11.

That analysis is unpersuasive. Du Pont's insistent initial denial of presence of DEG in its cellophane would not necessarily be "illogical." Arguably, Du Pont may have been willing to gamble that it could succeed on its *forum non conveniens* mo-

tion without having to concede a key liability issue. Such speculation aside, however, subjective bad faith is no longer an element of Rule 11 analysis.

We have previously noted that "[t]he use of 'shall' [in Rule 11] was deliberate and carefully considered, and was intended to overcome the reluctance of courts to assess sanctions against erring counsel and parties.... [A]lthough trial judges still retain substantial discretion, its exercise is now directed more to the nature and extent of sanctions than to initial imposition." *Lieb,* 788 F.2d at 157. The district court's declination to consider imposition of sanctions for a Rule 11 violation simply because a party's action simplifies a case is inconsistent with this standard.

In *Cooter & Gell,* the Supreme Court concluded that the fact that a plaintiff voluntarily dismissed his complaint did not eliminate the issue of whether it violated Rule 11. "As the 'violation of Rule 11 is complete when the paper is filed,' ... a voluntary dismissal does not expunge the Rule 11 violation." 110 S.Ct. at 2455. Similarly, the fact that Du Pont's admission of a fact it earlier had denied made dismissal of this action more likely does not answer the question of whether it abused the judicial process by denying an allegation it should have known was true.

On the other hand, nothing we have said should be construed to suggest that parties should be reluctant to make concessions on liability. In fact, that is the laudable goal to which discovery is often directed and such a concession alone does not implicate the concerns toward which Rule 11 is directed. It may well be that Du Pont could not have reasonably known at the time it answered Lony's complaint that its cellophane contained DEG, but that is a determination the district court never made. Nor has the district court ever discussed the extent of discovery and other effort which was directed to the need to prove the fact Du Pont has now conceded.

We express no opinion as to the result the district court should reach,[4] but merely

conclude that it gave inadequate consideration to Lony's Rule 11 motion. Therefore, we will vacate the district court's denial of Lony's Rule 11 motion and remand to the district court for a reassessment of the motion consistent with the recent jurisprudence governing Rule 11.

## V.

### *Conclusion*

For the foregoing reasons, we will reverse the district court's order dismissing Lony's complaint on *forum non conveniens* grounds and remand for reconsideration of that motion in light of this opinion. We will also vacate the district court's decision not to impose Rule 11 sanctions on Du Pont and remand for further proceedings on that issue as well.

---

4. Indeed, it is unclear from this record whether there is any signature of Du Pont's which could

form the basis for invocation of Rule 11 against it. *See Business Guides,* 111 S.Ct. at 928–29, 933.