In re **CENTRAL JERSEY AIRPORT SERVICES, LLC, Debtor.**

No. 02–52830 (WHG).

United States Bankruptcy Court, D. New Jersey.

Aug. 20, 2002.

178

Richard Trenk, Esq., Rabinowitz, Trenk, Lubetkin & Tully, West Orange, NJ, for Central Jersey Airport Services, LLC.

Michael Kahme, Esq., Hill Wallack, Princeton, NJ, for the Bauer Group.

Allison Berger, Esq., Fox Rothschild O'Brien & Frankel LLP, Lawrenceville, NJ, Jay Ochroch, Fox Rothschild O'Brien & Frankel LLP, Philadelphia, PA, for Kenneth Pizzo and KSP Airport Development Group.

### PROCEDURAL HISTORY

WILLIAM H. GINDIN, Bankruptcy Judge.

The debtor, Central Jersey Airport filed a voluntary Chapter 11 petition on March 12, 2002. The parties first appeared before the court on March 18, 2002 on a Motion to Dismiss filed by the Bauer group, a Retention Motion and a Cash Collateral Order. The retention motion was granted and the use of cash collateral was allowed. The Motion to Dismiss was adjourned until June 12, 2002. Prior to the June 12, 2002 hearing, the Bauer group and the debtor reached a settlement and moved for court approval of the settlement agreement. After a hearing, wherein the sole objector was Kenneth Pizzo, the court approved the settlement agreement between the Bauer group and the debtor.

Presently before the court are several motions. Pizzo and KSP Airport filed a Motion for Reconsideration of the court's approval of a settlement agreement, and a Cross–Motion to Dismiss alleging that the debtor filed its petition in bad faith. The debtor filed a Motion to Reject an agreement of sale between the debtor and Mr. Pizzo, pursuant to 11 U.S.C. § 365 and a Motion to Extend the exclusivity period pursuant to 11 U.S.C. § 1121(d). Pizzo filed a Motion for Stay Relief and Abstention.

All motions and responses were timely and properly filed with the court. The court heard oral argument on the motions on July 10, 2002 and reserved decision.

### JURISDICTION

The court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. Venue is properly in this district pursuant to 28 U.S.C. § 1408.

### FACTS

The debtor in possession, Central Jersey Airport Services LLC ["CJA"] owns and operates an airport which is located on approximately 123 acres of land in Hillsborough Township, Somerset County, New Jersey. The airport also owns machinery

and equipment used in its operations. Approximately 37,000 take offs and landings occur at the airport each year.

Additionally, the debtor's property is environmentally contaminated. Environmental studies were performed on the property, and the debtor prepared and continues to comply with a remediation plan approved by the NJDEP.

CJA is organized as a Limited Liability Company and is controlled by five members, Joseph Horner, Steven Richard, Robert Bauer, John Kerwin and Greg Egnatuk. The chapter 11 petition was filed by Horner. After the filing, Bauer, Kerwin and Egnatuk ["the Bauer Group"] filed a motion to dismiss the petition alleging that Horner did not have corporate authority to file the petition. The motion was amicably resolved amongst the debtor's managing members pursuant to a settlement agreement approved by the court.

Pursuant to the settlement agreement, Bauer holds a note secured by the debtor's property for $3,600,000 the balance of which is due in December 2002. If the note is not paid at that time, a deed to the property will be delivered to Robert Bauer. Additionally, the Bauer Group and Horner settled their corporate governance differences and the Bauer Group's Motion to Dismiss was voluntarily withdrawn.

Kenneth Pizzo objected to the settlement agreement between CJA and the Bauer Group. Pizzo's objections stem from an agreement of sale for the debtor's property executed on or about December 30, 1998. Subsequent to the agreement, Pizzo assigned all his right title and interest in the debtor's property to KSP Airport Development Group ["KSP"]. Pizzo sought to purchase the property for residential and possibly commercial development. The purchase price for the property was to be determined by the number of approved market units to be built on the premises. The number of units to be built was subject to land development approvals. The agreement of sale set the purchase price by multiplying the per unit purchase price times the number of approved units, with a minimum purchase price of $5,000,000.

Under the agreement, KSP would pay a deposit of $600,000 and an additional $1,900,000 upon the debtor's compliance with the remediation plan. The sale agreement contained many other stipulations requiring performance by both CJA and KSP.

On or about January 2, 2002, KSP initiated state court proceedings against the debtor seeking specific performance of the sale agreement. As a result of the debtor's bankruptcy filing, the state court proceedings were stayed on March 12, 2002.

## DISCUSSION

On July 10, 2002, the court held a hearing wherein KSP argued for dismissal of the debtor's Chapter 11 petition on the grounds that the petition was filed in bad faith, or in the alternative for stay relief to proceed with its state court actions for specific performance.

### Bad Faith

Section 1112(b) affords the court the discretion to dismiss or convert a bankruptcy case, after a notice and hearing "for cause". 11 U.S.C. § 1112(b). The code provides a non exclusive list of ten factors which constitute cause. See 11 U.S.C. § 1112(b)(1)-(10). The legislative history of section 1112(b) explains that courts are afforded the discretion to dismiss a case when doing so is in the best interests of creditors. "The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." H.R.Rep. No. 595, 95th Cong., 1st Sess.

405–06 (1977), U.S.Code Cong. & Admin.News 1978, pp.5963, 6362.

■ Courts dismissing Chapter 11 cases for "bad faith" have done so based on a combination of factors.[1] As the Third Circuit noted in *SGL Carbon*, "courts have not been unanimous about what constitutes good faith in the Chapter 11 filing context." *In re SGL Carbon*, 200 F.3d 154, 165 (3d cir.1999), *citing In re Trident*, 52 F.3d 127, 131 (6th Cir.1995)(considering eight factors for good faith consideration); *In re Marsch*, 36 F.3d 825, 828–29 (9th Cir.1994)(explaining differing approaches to a good faith finding.)(further citations omitted.). Accordingly, the Third Circuit adopted a "totality of facts and circumstances" approach in analyzing the good faith requirement. *In re SGL Carbon*, 200 F.3d 154, 165 (3d Cir.1999), *citing In re Trident*, 52 F.3d 127, 131 (6th Cir.1995); *In re Marsch*, 36 F.3d 825, 828–29(9th Cir.1994)(further citations omitted).

■ Movant seeks a dismissal of debtor's Chapter 11 petition on the grounds that the petition was filed in bad faith. Movant argues that the petition was filed in bad faith because 1.) aside from insiders, the debtor has approximately $23,000 in unsecured debt, 2.) the case involves a two party dispute between the debtor and KSP, 3.) the petition was filed "on the heels" of KSP's filing of its state court action for specific performance, and 4.) the

sole purpose of the debtor's filing was to reject the Pizzo contract.

Regarding movant's factual contentions, on its petition, the debtor lists assets totaling $7,000,000 and liabilities totaling $3,000,000, of which approximately $874,000 is unsecured debt. KSP's argument that there is roughly $23,000 in unsecured debt is unavailing. Whether the $874,000 in unsecured debt is owed to the debtor's affiliates and managing members is irrelevant, as it is still indebtedness for which the debtor is liable. Clearly, the debtor is an eligible debtor under 11 U.S.C. § 109.

Equally unpersuasive is KSP's argument that the case represents a two party dispute. The debtor's petition lists two other state court actions involving parties other than KSP, and the court's list of creditors contains 13 creditors, not including Pizzo and KSP Airport Development Group. The court finds that this case involves multiple parties and creditors, and cannot be characterized as a two party dispute.

■ A further consideration for the court is the fact that the debtor was solvent at the time of its filing. As stated above, on it's petition, the debtor lists assets totaling 7 million and liabilities of only 3 million. This factor, however, is not controlling in the court's determination for several reasons. First, a careful reading of 11 U.S.C. § 109 reveals no requirement

---

1. In, *In re Trident*, the Fifth Circuit noted, "[w]hile no single fact is dispositive, courts have found the following factors meaningful in evaluating an organizational debtor's good faith:

(1) the debtor has one asset;

(2) the pre-petition conduct of the debtor has been improper;

(3) there are only a few unsecured creditors;

(4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;

(5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

(6) the filing of the petition effectively allows the debtor to evade court orders;

(7) the debtor has no ongoing business or employees; and

(8) the lack of possibility of reorganization." *In re Trident*, 52 F.3d 127, 131 (6th Cir.1995) *citing In re Laguna Assoc. Ltd. Partnership*, 30 F.3d 734, 738 (6th Cir.1994) (citations omitted).

of insolvency for the filing of a Chapter 11 proceeding. Second, case law, as well, clearly establishes that a debtor need not be insolvent at the time of filing. *In re SGL Carbon,* 200 F.3d at 163, *citing In re The Bible Speaks,* 65 B.R. 415, 424 (Bankr. D.Mass.1986); *In re Talladega Steaks, Inc.,* 50 B.R. 42, 44 (Bankr.N.D.Ala.1985).

Third, it must be pointed out that the airline industry as a whole is experiencing financial difficulties and there is no reason that a debtor airport which seeks the protection of the bankruptcy court to prevent further financial distress should not be permitted to reorganize. At the hearing on these motions, the debtor presented evidence that the State of New Jersey is taking steps to continue the operations of smaller airports, like Central Jersey Airport, because they facilitate business operations throughout the State. Based on the public policy of the state in facilitating businesses through accessibility to smaller airports throughout the state, and the financial distress of the airport industry as a whole, the debtor has a legitimate and valid purpose for seeking the protection of the bankruptcy laws regardless of its solvency at the time of filing.

KSP asserts that the petition was filed in bad faith because it was filed at the same time that Pizzo sought specific performance of the sale agreement in state court. As such, movant suggests that the debtor filed its petition solely to reject the Pizzo contract. Movant cited case law holding that where a debtor filed a Chapter 11 petition for the sole purpose of rejecting an executory contract, there was sufficient evidence of bad faith to warrant dismissal. *In re Silberkraus,* 253 B.R. 890 (Bankr.C.D.Cal.2000).

At the hearing, the debtor cited cases holding that where a debtor filed a Chapter 11 petition solely for the purpose of rejecting an executory contract, that alone was not sufficient to warrant dismissal based on bad faith. *In re W & L Assoc., Inc.,* 71 B.R. 962 (Bankr.E.D.Pa. 1987); *In re Wells,* 227 B.R. 553 (Bankr. M.D.Fla.1998). Although there exists conflicting case law among the Bankruptcy Courts, this court is bound by the Third Circuit's mandate that bad faith dismissal is a fact intensive analysis, which should be decided on the totality of the circumstances, and not solely on the basis of one or more of the *Trident* factors. *See In re SGL Carbon,* 200 F.3d 154.

Considering the totality of facts and circumstances in this case, the court cannot make a finding that the debtor filed its Chapter 11 petition in bad faith. Since the filing, the debtor has demonstrated a good faith effort in restructuring its business. Since the petition date, the debtor resolved issues of corporate governance amongst its managing members, restructured its secured debt on the property, and entered into a consent agreement with one of its unsecured creditors. The debtors actions post petition evidence the debtors legitimate efforts to reorganize.

The court finds that: 1.) the case is not a two party dispute, as the debtor has at least thirteen creditors other than movants; 2.) the debtor is legitimately negotiating with its creditors, as evidenced by its post-petition settlement with its secured creditor, Robert Bauer; as well as a post-petition consent agreement with an unsecured creditor, the Estate of John Coleman; 3.) the debtor has a reasonable probability of successful reorganization, based upon counsel's representation that a chapter 11 plan is in preparation and almost completed; and 4.) based on policy reasons, the debtor has a legitimate and valid purpose for seeking the protection of the bankruptcy laws. This court finds that the debtor's petition was filed in good faith

and movant's Motion to Dismiss pursuant to 1112(b) is denied.

### Motion for Reconsideration

■ Rule 59(e) sets forth the standards controlling a motion for reconsideration. A court should grant a motion for reconsideration when the moving party shows one of three instances; (1) there is newly available evidence, (2) there is an intervening change in the controlling law; or, (3) there is a need to correct a clear error of law or prevent manifest injustice. *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995); *Lony v. E.I. DuPont de Nemours & Co.*, 935 F.2d 604, 608 (3d Cir.1991).

■ Pizzo moves for reconsideration of the approval of the settlement between the debtor and the debtor's sole secured creditor, Robert Bauer. The settlement agreement between the debtor's managing members was approved by this court on June 12, 2002. Movant asserts reconsideration is warranted, in this instance to prevent or clarify a manifest error of law. Specifically, movant argues that the court either was unaware of or misconstrued three facts: 1.) that the mortgage to the Bauer group was in default, 2.) that the Bauer group had filed a stay relief motion and 3.) that the court misruled on the release to Bauer, which movant argues is precluded by the Third Circuit's opinion in *Continental Airlines.*[2]

At the June 12, 2002 hearing, the court carefully reviewed and analyzed the requisite criteria from *In re Martin*, 91 F.3d 389 (3d Cir.1996), in approving the settlement agreement between the debtor and the Bauer group. The court's conclusions were not based on the facts that the Bauer group mortgage was in default, nor that

the Bauer group moved for stay relief. In a discussion on the value of the property, the court stated that a "property in foreclosure or potentially under foreclosure ..." recognizing that the debtor's property was not yet in foreclosure proceedings. To the extent that the court misstated these facts, there was no clear error of law, as these facts were not outcome determinative.

■ "A motion for reconsideration is not appropriate where the matter to be reconsidered would not reasonably have altered the result previously reached by the court." *Somerville v. Snyder*, No. 98–219–GMS, 2002 WL 202104, 2002 U.S. Dist. LEXIS 2030 (D.Del. Feb.4, 2002), *citing, Brambles USA, Inc., v. Blocker*, 735 F.Supp. 1239, 1240 (D.Del.1990).

Additionally, the releases in the settlement are consistent with precedent. As this court previously noted in, *In re Arrowmill Development Corp.*, 211 B.R. 497 (Bankr.D.N.J.1997), "voluntary consensual releases are permissible in bankruptcy cases."

The release provides:

"[a]ll parties to the within stipulation agree that the within stipulation shall include and resolve any and all claims between them. Thus to the extent that the Bauer group receives the settlement amount, same shall be in full satisfaction of all claims against the debtor and Horner. Further to the extent that Bauer receives the property, same shall be in full satisfaction of all claims against the debtor and Horner." [Exhibit "A" to Order Approving Settlement, p. 5 ¶7.].

The settlement at issue resolves claims between the Bauer group and Horner, and as such is a voluntary release between two

---

**2.** In, *In re Continental Airlines*, 203 F.3d 203 (3d Cir.2000), the Third Circuit held that releases to non debtors in Chapter 11 plans of reorganization must meet two standards to be valid: fairness and necessity.

parties, and 11 U.S.C. § 524(e) is not implicated. Because 524(e) does not come into play in this matter, the *Continental* requirements of fairness and necessity in releases to non-debtors, are inapplicable. *In re Continental Airlines*, 203 F.3d 203 (3d Cir.2000). Even if the factors were applicable, they are met. The fairness element is met because Horner is providing consideration for the release from the Bauer group. In exchange for a release from liability, Horner either needs to pay the fixed secured claim of 3.6 million dollars to the Bauer group, or he will be required to turn over title to the property. The necessity element is met by virtue of the fact that the parties involved are members of the debtor entity, and as such any liability on their part would be born by the estate. As such, the releases questioned by movant are consistent with both the Bankruptcy Code and Third Circuit precedent.

### Motion to Reject Agreement of Sale

■ The debtor seeks to reject the Agreement of Sale between CJA and KSP. The Bankruptcy code provides that the trustee or debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Although the code does not provide the standard to be applied in determining the propriety of the trustee or DIP's decision, most Circuits, including the Third Circuit have adopted the business judgment test. *Sharon Steel Corp. v. National Fuel Gas Dist. Corp.*, 872 F.2d 36 (3d Cir.1989), *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir.1993). In *Orion*, the Second Circuit explained that the role of the bankruptcy court, in the assumption/rejection process "is as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the DIP." *In re Orion Pictures Corp.*, 4 F.3d at 1099.

■ To satisfy the test, the trustee or debtor in possession needs to establish that rejection will benefit the estate. *In re Sharon Steel Corp.*, 872 F.2d 36 (3d Cir. 1989). Once the debtor meets its burden, the non debtor party bears the burden of proving that the debtor's decision derives from bad faith, whim or caprice. *In re Audra–John Corp.*, 140 B.R. 752, 759 (Bankr.D.Minn.1992).

■ The debtor asserts that the estate will benefit from rejecting the contract in two ways. First, the debtor asserts that in rejecting the contract, the debtor has a good chance of selling the property at a higher price. The minimum contract sale price is 5 million dollars, and the debtor has an appraisal of the property, from three years ago valuing the property at 7 million. Second, the sale agreement places burdensome requirements on the debtor, wherein the debtor must await necessary approvals which may take many months or even years. Rejection of the agreement eliminates the debtor's onerous obligations.

In response, movant questions the appraisal of three years ago and argues that the debtor has not met its burden of demonstrating that the estate will benefit from rejecting the contract. As was noted at the hearing, however, the value of property within the state of New Jersey has continually increased. As such, the court finds that the debtor has met its burden of showing that the estate will benefit from rejection of the Pizzo sale agreement. The fact that the estate may be entitled to an additional 2 million dollars is a compelling demonstration of gains for the estate. Most importantly, the debtor can reasonably take such a business risk if in its sound business judgment, it is worth the risk.

Movant can rebut the debtor's showing of benefit to the estate by a showing of bad faith, whim or caprice. As discussed above, the court finds that the debtor filed its petition in good faith, and no evidence showing whim or caprice was submitted to the court.

### Motion for Extension of Time to File a Disclosure Statement

The debtor moves pursuant to 11 U.S.C. § 1121(d) for an extension of time to file its plan of reorganization. In accordance with 11 U.S.C. § 1121(b), only a debtor may file a plan within 120 days of the petition date. Additionally, 11 U.S.C. § 1121(d) affords the debtor an opportunity to request an extension of time within which to file its plan of reorganization. Such an extension may be granted by the bankruptcy court for cause after notice and a hearing.

 While the granting or denial of such a request is within the discretion of the bankruptcy court, the moving party bears the burden of proving that "cause" exists justifying the grant of an extension. *In re Service Merchandise Co. Inc.*, 256 B.R. 744, 751 (Bankr.M.D.Tenn.2000). *In re Geriatrics Nursing Home*, 187 B.R. 128, 131 (D.N.J.1995). In making this determination courts have considered the following factors: 1.) the size and complexity of the case, 2.) the necessity of sufficient time to negotiate and prepare adequate information, 3.) the existence of good faith progress, 4.) whether the debtor is paying its debts as it becomes due, 5.) whether the debtor has demonstrated reasonable prospects for filing a viable plan, 6.) whether the debtor has made progress negotiating with creditors, 7.) the length of time a case has been pending, 8.) whether the debtor is seeking an extension to pressure creditors, and 9.) whether or not unresolved contingencies exist. *In re Service Merchandise Co.*, 256 B.R. 744, 751

(Bankr.M.D.Tenn.2000); *In re Crescent Mfg.*, 122 B.R. 979, 982 (Bankr.N.D.Ohio 1990); *In re McLean Indus. Inc.*, 87 B.R. 830, 834 (Bankr.S.D.N.Y.1987).

 At the hearing, the debtor asserted that a plan is not only viable, in this case, but is almost completed. As discussed above, the debtor is making sufficient progress in this case in reaching negotiations with its creditors. As such, the court grants the debtor a thirty day extension from the date of this opinion within which to file its plan of reorganization.

### Motion for Stay Relief or Abstention

 Lastly, KSP moves for stay relief and abstention to proceed with its state court action. Movant requests that the Bankruptcy court abstain from hearing the breach of contract issues and permit movant to proceed with their state court action.

Section 1334 provides for mandatory and permissive abstention. Abstention is mandatory in matters where the bankruptcy court lacks jurisdiction. 28 U.S.C. § 1334(c)(2). Bankruptcy court jurisdiction exists when a proceeding may impact on "the debtor's rights, liabilities, options or freedom of action" or the "handling and administration of the bankruptcy estate." *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 264 (3d Cir.1991), *quoting, In re Smith*, 866 F.2d 576, 580 (3d Cir.1989). In the instant matter, the dispute between KSP and CJA involves property of the debtor. KSP's claims in state court directly impact CJA's options regarding the property. If KSP were granted specific performance, then the debtor would no longer be capable of carrying out its daily operations. As such, the bankruptcy court has jurisdiction and mandatory abstention is inappropriate.

██ Pursuant to 28 U.S.C. § 1334(c)(1), permissive abstention is within the sound discretion of the bankruptcy judge. *In re Asousa Partnership*, 264 B.R. 376, 391 (Bankr.E.D.Pa.2001). In determining whether permissive abstention is appropriate, courts look to many factors, including:

1.) the presence in the proceeding of non debtor parties;

2.) the extent to which state law issues predominate;

3.) the unsettled nature of the applicable state law;

4.) the presence of a related proceeding commenced in state court;

5.) the jurisdictional basis, if any, other 28 U.S.C. § 1334;

6.) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7.) the substance rather than the form of an asserted "core" proceeding;

8.) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court without enforcement left to the bankruptcy court;

9.) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

10.) the existence of a right to a jury trial;

11.) the burden on the bankruptcy court's docket; and

12.) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.

*In re Chicago, Milwaukee, St. Paul & Pacific RR Co.*, 6 F.3d 1184, 1189 (7th Cir.1993); *In re Eastport Assoc.*, 935 F.2d 1071 (9th Cir.1991).

Regarding the above factors; non debtor parties are not present in this proceeding, state law is settled and the state law issues do not predominate. Additionally, the state law issues are directly related to the bankruptcy proceeding, because the state law claim involves property of the debtor. As such, it would not be feasible to sever the state law claims.

Moreover, the state action seeks a non jury remedy, there is no forum shopping by the debtor, and the bankruptcy court's docket is not burdened. Based on the above, permissive abstention is not warranted.

### CONCLUSION

In conclusion, and based on the above discussion, the court finds the following:

1.) The debtor's petition was filed in good faith, and the movant's Cross-Motion to Dismiss is **DENIED**,

2.) The debtor has met its burden of demonstrating that rejection of the Agreement of Sale between the debtor and Pizzo will benefit the estate, as such, the debtor's motion to reject the agreement of sale pursuant to 11 U.S.C. § 365 is **GRANTED**;

3.) KSP's Motion for Reconsideration is **DENIED**;

4.)The debtor's Motion to Extend the exclusivity period is **GRANTED**; the debtor is afforded thirty days from the date of this order within which to file its plan;

5.) KSP's motion for Stay Relief is **DENIED**;

6.) KSP's Motion for Abstention is **DENIED**.

Counsel for the debtor will submit an appropriate order within ten days of the date of this order.