**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1967
_____

MICHELLE TROTTER,
Appellant

v.

7R HOLDINGS LLC;
LUIS A. RUBI GONZALEZ;
M/Y OLGA
_____

On Appeal from the District Court of the Virgin Islands
(D.C. Civ. No. 3-14-cv-00099)
District Judge:  Honorable Curtis V. Gomez
_____

Argued May 2, 2017
_____

Before: GREENAWAY, JR., SHWARTZ, and FUENTES,
Circuit Judges.

(Opinion Filed: October 12, 2017)

1

Thomas F. Friedberg                    **[ARGUED]**
Sarah L. Bunge
Law Offices of Friedberg & Bunge
610 West Ash Street, Suite 1400
P.O. Box 6814
San Diego, CA 92166

    *Counsel for Appellant*

Jennifer P. Brooks
Kelly Nicole H. Charles-Collins
Michael J. Dono                        **[ARGUED]**
Jennifer Quildon Miller
Hamilton Miller & Birthisel,
150 Southeast Second Avenue, Suite 1200
Miami, FL 33131

    *Counsel for Appellees*

---

OPINION OF THE COURT

---

GREENAWAY, JR., *Circuit Judge*.

In this appeal, we must determine whether the District Court properly exercised its power to dismiss a case pursuant to the *forum non conveniens* doctrine when it dismissed

Appellant's claims under the Jones Act, 46 U.S.C. § 30104 (2012), and general maritime laws for unseaworthiness, negligence, and maintenance and cure. We shall affirm the District Court in two steps. First, we hold that the general presumption that "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247 (1981), applies to these claims (a) because the remedy provided by the alternative forum is not clearly inadequate and (b) because the Jones Act does not contain a special venue provision. Second, we hold that the District Court did not abuse its discretion in exercising its *forum non conveniens* power (a) because the District Court correctly determined that an adequate alternative forum existed and (b) because the District Court reasonably balanced the relevant private and public interest factors.

## I.

This case arises from the following facts. Luis A. Rubi ("Rubi"), a U.S. citizen, serves as the Director of 7R Holdings, LLC, a limited liability company with its principal place of business in Puerto Rico. 7R Holdings holds 7R Charters Limited.[1] 7R Charters owned M/Y Olga, a yacht registered in the British Virgin Islands ("BVI"). Bernard Calot captains M/Y Olga. In a series of conversations over email and the telephone, Captain Calot, while in Puerto Rico, hired Michelle Trotter ("Trotter"), while in Florida, to work as a chef on M/Y Olga. On December 19, 2012, Trotter boarded M/Y Olga in

---

[1] The record does not provide information on 7R Charters's principal place of business but the District Court stated, without citation, that it is a British Virgin Islands corporation.

St. Thomas, U.S. Virgin Islands ("USVI"). On December 24, 2012, M/Y Olga traveled to Scrub Island, BVI, and let down its anchor. Trotter allegedly sustained an injury while descending stairs that connected M/Y Olga to Scrub Island's dock. Shortly after the accident, Trotter received treatment for her alleged injuries at a BVI hospital and then flew back to Florida.

Trotter sued Rubi, 7R Holdings, and M/Y Olga ("Appellees") in the District Court of the Virgin Islands pursuant to the Jones Act and general maritime laws for the personal injury that she claims that she sustained on Scrub Island. Appellees moved to dismiss Trotter's complaint for *forum non conveniens*.

The District Court granted the motion. The District Court, relying on *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147 (3d Cir. 2010), divided its decision into two parts. First, it found that the alternative forum, the BVI, qualified as an adequate alternative forum. Second, it held that the balance of the public and private interests overcame Trotter's choice of forum.

On appeal, Trotter raises two issues. First, Trotter argues that, as a matter of law, we should vacate the District Court's decision because the District Court failed to perform a choice of law analysis before dismissing Trotter's complaint pursuant to *forum non conveniens*. Second, Trotter asserts that we should vacate the District Court's decision because the District Court abused its discretion by granting the motion to dismiss pursuant to *forum non conveniens*. Appellees insist that these arguments lack merit. We agree and will affirm.

4

II.[2]

In resolving this case, we must address two issues. First, did the District Court err in failing to determine whether U.S. law applies before deciding *forum non conveniens*? Second, did the District Court abuse its discretion in dismissing Trotter's claims for *forum non conveniens*? We review the first question de novo, *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013), and the second question for abuse of discretion, *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 872 (3d Cir. 2013).

A.

The District Court did not err in failing to determine whether U.S. law applies before dismissing the case for *forum non conveniens*. This conclusion rests on the Supreme Court's *forum non conveniens* jurisprudence.

The Supreme Court, "in one form of words or another, has repeatedly recognized the existence of the power to decline jurisdiction in exceptional circumstances." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947). One example of this power is the principle of *forum non conveniens*. "The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Id.* at 507. A court may exercise this power when litigating the case in the

---

[2] Trotter invoked the District Court's jurisdiction under 28 U.S.C. § 1331. Trotter filed a timely notice of appeal on April 17, 2016. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

5

chosen forum would either oppress a defendant "out of all proportion to plaintiff's convenience" or cause the court "administrative and legal problems." *Piper Aircraft Co.*, 454 U.S. at 241 (internal quotation marks omitted).

In deciding whether a venue would oppress a defendant, courts may consider "private interests," such as access to proof, availability of process, and other practical issues. *Gulf Oil*, 330 U.S. at 508. In determining whether a venue would cause administrative or legal problems, courts may consider "public interests," such as the burdens on the courts and local juries. *Id.* at 508–09. "[T]he combination and weight of factors requisite to given results are difficult to forecast or state . . . ." *Id*. at 508. As a result, "The forum non conveniens determination is committed to the sound discretion of the trial court" and "[i]t may be reversed only when there has been a clear abuse of discretion." *Piper Aircraft Co.*, 454 U.S. at 257. "[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id.*

In *Piper Aircraft Co.*, a case involving wrongful-death actions, the Supreme Court held that "[t]he possibility of a change in substantive law should *ordinarily* not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Id*. at 247 (emphasis added). The Supreme Court came to this conclusion because privileging this factor would prevent the doctrine from serving private and public interests. It would undermine the private interests because "[i]f substantial weight were given to the possibility of an unfavorable change in law . . . , dismissal might be barred even where trial in the chosen forum was plainly inconvenient." *Id.* at 249. It would harm the public interests because "[i]f the possibility of a change in law were given

6

substantial weight . . . [c]hoice-of-law analysis would become extremely important, and the courts would frequently be required to interpret the law of foreign jurisdictions." *Id.* at 251.

In at least two situations, however, the Supreme Court has concluded that choice of law questions must receive substantial or conclusive weight in *forum non conveniens* decisions. First, "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight." *Id*. at 254. Second, a "plaintiff's choice of a forum cannot be defeated on the basis of *forum non conveniens*" when "the special venue act under which those cases are brought [is] believed to require it." *Gulf Oil*, 330 U.S. at 505. Special venue acts "specifically provide[] where venue may be had in any suit on a cause of action arising under that statute." *Id.* at 506.

The Supreme Court has found that at least two special venue acts prohibited courts from dismissing cases for *forum non conveniens*. In the first case, *Baltimore & O. R. Co. v. Kepner*, the Court held that Congress gave "[a] privilege of venue" to sue pursuant to the Federal Employers' Liability Act and that "this right of action cannot be frustrated for reasons of convenience or expense." 314 U.S. 44, 54 (1941). In the second case, *United States v. National City Lines*, the Court concluded, "In the face of th[e Clayton Act's] history we cannot say that room was left for judicial discretion to apply the doctrine of forum non conveniens so as to deprive the plaintiff of the choice given by the section." 334 U.S. 573, 588 (1948). Congress subsequently superseded these Supreme Court decisions by enacting the domestic-transfer statute, 28 U.S.C. § 1404(a) (2012), which allows a district court to

7

"transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice." *Id.*; *see United States v. Nat'l City Lines, Inc.*, 337 U.S. 78 (1949) (recognizing that § 1404(a) allows for the transfer of Clayton Act suits); *Ex parte Collett*, 337 U.S. 55 (1949) (recognizing that § 1404(a) allows for the transfer of Federal Employers' Liability Act suits).

Trotter does not recognize *Piper Aircraft Co.*'s general presumption against giving choice of law "substantial weight in the *forum non conveniens* inquiry," 454 U.S. at 247, or the two exceptions to this rule. We, however, do recognize this rule and its exceptions. As a result, we address whether either of the two exceptions apply here. We answer these questions, even though Trotter did not raise them in her written or oral communications to us, because they are antecedent legal issues that we must resolve before deciding the case as a whole. *See Haybarger v. Lawrence Cty. Adult Probation & Parole*, 667 F.3d 408, 412–13 (3d Cir. 2012).

We conclude that the first exception does not apply because the District Court correctly held that the alternative forum would recognize Trotter's negligence claims. As a result, this is not a case where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co.*, 454 U.S. at 254.

We hold that the second exception—the special venue provision exception—does not apply either. When Congress passed the Jones Act, it sought "to provide liberal recovery for injured workers," *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432 (1958), and included a "special venue provision" that "provided a more generous choice of forum than would have been available at that time under the general venue statute,"

8

*Pure Oil Co. v. Suarez*, 384 U.S. 202, 204–05 (1966). The special venue provision, as originally enacted, read as follows: "Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." The Merchant Marine Act, Pub. L. No. 66-261, § 20, 41 Stat. 988 (1920).[3] The contemporaneous general venue statute, by contrast, omitted any reference to the location of "his principal office" and instead only allowed plaintiffs to sue a defendant "in the district where he resides." Act March 3, 1911, c. 231, § 52, 36 Stat. 1101 (1913).

Congress amended the Jones Act in 2008 by striking the special venue provision in its entirety. Because of this amendment, we conclude that *Piper Aircraft Co.*'s general presumption—that choice of law decisions are not entitled to substantial weight in the *forum non conveniens* analyses—controls, and the special-venue exception does not apply to the Jones Act.

The Amendment's legislative history does not question this conclusion. In passing this amendment, the House of Representatives Committee on the Judiciary published a report that explained that it did not intend to change the substantive law: "This subsection is being repealed to make clearer that the prior law regarding venue, including the holding of *Pure Oil Co. v. Suarez*, 384 U.S. 202 (1966) and the cases following it,

---

[3] Jurisdiction means venue in this context. *Pan. R. Co. v. Johnson* , 264 U.S. 375, 384–85 (1924) ("[T]he provision is not intended to affect the general jurisdiction of the District Courts as defined in section 24, but only to prescribe the venue for actions brought under the new act of which it is a part.").

9

remains in effect, so that the action may be brought wherever the seaman's employer does business." H.R. Rep. 110–437, 5 (2007). *Pure Oil Co.* held that 28 U.S.C. § 1391 expanded the Jones Act's "reside[nce]" requirement and the availability of venue from the defendant's place of incorporation and place of principal office to the place of incorporation, the place of license, and the place where the corporation does business. 384 U.S. at 203–05, 206. It observed that the Jones Act contained a "special venue provision." *Id.* at 204. This case, as cited in the legislative history, did not concern *forum non conveniens* at all, but instead focused on the proper scope of venue under the Jones Act. Thus, neither *Pure Oil Co.* nor the legislative history undermines our conclusion.

Our sister courts of appeals' decisions do not give us pause. Of the five circuits to consider the question, three concluded that the Jones Act, as originally enacted, contained a special venue provision that prohibited *forum non conveniens* dismissal. *See, e.g.*, *Vasquez v. YII Shipping Co.*, 692 F.3d 1192, 1197 (11th Cir. 2012) ("Under the federal maritime choice-of-law test, applicable to Jones Act seafarers in federal district court, a case should not be dismissed on grounds of forum non conveniens if federal maritime law applies to the case . . . ."); *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 662 (9th Cir. 2009) ("[I]n Jones Act cases . . . a court must first make a choice of law determination before dismissing for *forum non conveniens*."); *Needham v. Phillips Petroleum Co. of Nor.*, 719 F.2d 1481, 1483 (10th Cir. 1983) ("In order to apply the doctrine of *forum non conveniens*, the trial court must conduct a choice of law analysis in order to determine whether American or foreign law governs. If American law is applicable to the case, the *forum non conveniens* doctrine is inapplicable."). *But see Camejo v.*

10

*Ocean Drilling & Expl.*, 838 F.2d 1374, 1379 (5th Cir. 1988) ("We therefore, expressly disapprove of and overrule our Jones Act and general maritime caselaw that utilizes a modified forum non conveniens analysis."); *Cruz v. Mar. Co. of Phil.*, 702 F.2d 47, 48 (2d Cir. 1983) ("To summarize, when the Jones Act is applicable[,] federal law is involved and the district court must exercise its power to adjudicate, absent some exceptional circumstances such as the application of the abstention doctrine or, as here, the equitable principle of forum non conveniens."). In *DeMateos v. Texaco, Inc.*, 562 F.2d 895 (3d Cir. 1977), we indicated our support for the majority rule, but both Congress's repeal of the Jones Act's special venue provision and *Piper Aircraft Co.* call this majority rule into question. *See id.* (describing *DeMateos*'s interpretation as "dictum"). The absence of a special venue provision in the Jones Act demonstrates that there is no special-venue exception to the normal *forum non conveniens* approach and therefore no choice of law inquiry is required.

B.

Having found that neither exception to the general presumption against giving choice of law questions substantial weight in *forum non conveniens* decisions applies, we review the District Court's decision for abuse of discretion. *Kisano Trade & Invest Ltd.*, 737 F.3d at 872.

Here, the District Court did not abuse its discretion. "[W]hen considering a motion to dismiss on *forum non conveniens* grounds, a district court must first determine whether an adequate alternate forum can entertain the case." *Eurofins Pharma US Holdings*, 623 F.3d at 160 (alteration in original). After finding that an adequate alternative forum exists, the district court must "determine[] the amount of

11

deference due to the plaintiff's choice of forum" and "balance the relevant private and public interest factors." *Id.*

The private interest factors include: "access to sources of proof; availability of compulsory process for attendance of unwilling . . . witnesses;" "the cost of obtaining attendance of willing . . . witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp.*, 330 U.S. at 508.

The public interest factors include: the possibility of turning courts into "congested centers;" the likelihood that the case will burden a jury composed of people with "no relation to the litigation;" the probability that the case will "touch the affairs of many persons" in the community; and the chances that the court will be "at home with the . . . law that must govern the case." *Id.* at 508–09.

In articulating these factors, the Supreme Court repeatedly emphasized the district court's discretion in selecting and reviewing factors. "Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy" and that "the combination and weight of factors requisite to given results are difficult to forecast or state." *Id.* at 508. As a result, this list of factors is both over and under inclusive: "This list of considerations to be balanced is by no means exhaustive, and some factors may not be relevant in the context of a particular case." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528–29 (1988). "The moving defendant must show that an adequate alternative forum exists as to all defendants and, if so, that the private and public interest factors weigh heavily on the side of

12

dismissal." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 44 (3d Cir. 1988).

1.

In this case, the District Court found that the BVI could serve as an adequate alternative forum (a) because the BVI's judicial process resembled the USVI's legal procedures; (b) because the Defendants "have stipulated that they will submit themselves to the jurisdiction of the BVI courts;"[4] and (c) because the BVI's law would recognize Trotter's negligence claim. *Trotter v. 7R Holdings, LLC*, No. CV 2014-99, 2016 WL 1271025, at *2–3 (D.V.I. Mar. 30, 2016).

Trotter appeals two facets of this conclusion. First, she argues that the BVI could not serve as an adequate alternative forum because "it has no jurisdiction over *any* of the Defendants." Appellant's Br. at 25. Trotter asserts this contention despite her acknowledgement, and the District Court's finding, that the Appellees have "stipulated that they will submit themselves to the jurisdiction of the BVI courts." *Trotter*, 2016 WL 1271025, at *2. Trotter asks us to question this finding on the grounds that "[a] statement by counsel in a brief is not binding on the party or enforceable in any court." Appellant's Br. at 26. We reject this argument and side with the District Court because "one cannot casually cast aside representations, oral or written, in the course of litigation" and because "a reviewing court may properly consider the

---

[4] At Oral Argument, Appellees' counsel consented to service on behalf of all of his clients. Oral Arg. Recording at 24:00–25:30, http://www2.ca3.uscourts.gov/oralargument/audio/16-1967Trotterv.7RHoldingsLLC.mp3.

representations made in the appellate brief to be binding as a form of judicial estoppel." *EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046, 1050 (3d Cir. 1993).

Second, she claims that the BVI is not an adequate alternative forum because "Defendants have not established that BVI law provides *any* theory for Plaintiff to recover against Defendants." Appellant's Br. at 25. Trotter rests this claim on the observation that U.S. law provides a more favorable liability standard than the common law. She notes that "the Jones Act and unseaworthiness causes of action allow a condition on the dock to be imputed to Defendants even though they do not control the area where the seaman is injured" and that "a seaman injured in the service of the ship, even on shore leave, is entitled to maintenance and cure without any fault on the part of the vessel." *Id.* at 28.

We find this argument unpersuasive. In *Piper Aircraft Co.*, the Supreme Court held that a district court properly dismissed a claim under *forum non conveniens* and held that "there is no danger that [the plaintiffs] will be deprived of any remedy" even though the plaintiffs "may not be able to rely on a strict liability theory." 454 U.S. at 255. Trotter's argument mirrors the argument rejected by *Piper Aircraft Co.* because, in both cases, the plaintiffs claimed that U.S.—but not the foreign—law would allow them to recover without proving the defendants' negligence or fault. Because Trotter makes an argument that resembles the argument rejected by the Supreme Court in *Piper Aircraft Co.*, we affirm the District Court on this issue.

14

2.

The District Court held that, although Trotter's choice should receive "great deference" because she is a U.S. citizen, the "balance of the public and private factors clearly favors an alternate forum." *Trotter*, 2016 WL 1271025, at *4 (citing *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008)). Private factors counseled in favor of dismissal, the District Court found, (a) because no fact witness resided in the USVI; (b) because the accident occurred on either a vessel owned by a BVI corporation or on a piece of land in the BVI; and (c) because litigating the case in the USVI would cause the parties to "incur significant expenses." *Id*. at *5–6. Public factors supported dismissal, the District Court held, because it would be unfair to subject the citizens of the USVI to deciding a dispute that hinged on foreign evidence and foreign law and because the other factors came out as neutral.

Trotter appeals this decision by arguing that the District Court should have weighed these factors differently and should have considered additional factors. In making this argument, though, Trotter provides no persuasive case law. Indeed, the two cases that she claims most support her position differ from the instant case in important respects.

In the first case, *Lacey v. Cessna Aircraft Co.*, Graeme Lacey suffered injuries in a plane crash in Canada and sued three of the plane's manufacturers in the Western District of Pennsylvania. 932 F.2d 170, 172 (3d Cir. 1991).[5] The

[5] We do not address *Lacey*'s predecessor, *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38 (3d Cir. 1988), at length. In the prior case, we reversed the district court because it had granted the defendants' *forum non conveniens* motion even though the

15

manufacturers successfully moved to dismiss the case pursuant to the court's *forum non conveniens* power. *Id.* In granting the motion, the district court recognized the potential difficulty in compelling U.S. witnesses to appear in Canada and conditioned its dismissal "on defendants making all relevant witnesses and documents in their control available to plaintiff in the alternative forum for discovery and trial, at defendants' expense." *Lacey v. Cessna Aircraft Co.*, 736 F. Supp. 662, 664 (W.D. Pa. 1990). On appeal, we reversed in four steps. First, we observed that relevant evidence related to the plane's exhaust system, a product that a Pennsylvania-based defendant allegedly manufactured. *Lacey*, 932 F.2d at 173. Second, we noted that the Pennsylvania-based defendant "now represents that *no* documents relating to or personnel familiar with the company's prior aircraft exhaust business are under its control." *Id.* Third, because Lacey's claims depended on evidence related to the exhaust system and because no defendant controlled this evidence, we concluded that the court's conditional dismissal, which compelled defendants to produce all relevant witnesses and documents in the Canadian court, could not "ensure [Lacey's] access to sources of proof." *Id.* Fourth, the inadequacy of the conditional dismissal mattered because Canada's procedural laws prevented Lacey from obtaining evidence within the control of non-parties in the United States. *Id.* at 173–74.

---

defendants "submitted no evidence to support their contentions, except for a copy of a pleading filed in the British Columbia litigation." *Lacey*, 862 F.2d at 44. Here, the Appellees submitted affidavits to bolster their claims. As a result, *Lacey*'s predecessor provides little guidance and requires minimal attention.

Unlike in *Lacey*, the relevant evidence in the case at bar rests in the alternative forum. To prove her claims, Trotter may require documents from BVI companies, witnesses from the scene of her accident in the BVI, and access to the relevant dock in the BVI. Thus, our reasoning in *Lacey* does not apply here.

In the second case, *Lony v. E.I. Du Pont de Nemours & Co.*, Adolf Lony, a German sole proprietorship, bought cellophane from Du Pont, a Delaware corporation, and sold it to Haribo, a German corporation. 886 F.2d 628, 630 (3d Cir. 1989).[6] During the transaction, Du Pont told Lony that the cellophane did not contain a specific toxic chemical. *Id.* When it received the cellophane, Haribo discovered that it contained the specific toxic chemical and canceled its contract with Lony. *Id.* Lony claimed that it suffered a loss and sued Du Pont in the United States District Court for the District of Delaware. *Id.* at 631. Du Pont successfully moved for *forum non conveniens* and Lony appealed. *Id.* We reversed, *inter alia*, because the District Court abused its discretion in weighing the private and public interests. *Id.* at 643–44. It specifically abused its discretion in weighing the private interests, we held, because it regarded the private interest factors as standing in "equipoise or tipped to the defendant" but incorrectly

---

[6] We need not dwell on *Lony*'s progeny, *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604 (3d Cir. 1991). In the subsequent case, we reversed the district court because of its "failure to consider the extent of merits activity already completed and underway in Delaware." *Lony*, 935 F.2d at 613. Here, the District Court did not allow any discovery, let alone the six months of discovery at issue in *Lony*'s progeny. As a result, *Lony*'s progeny merits little discussion.

17

concluded that this balance "favors dismissal." *Id.* at 640. It abused its discretion in considering the public interest factors, we found, because it erroneously assumed that only foreign law would apply to Lony's claims in a U.S. court. *Id.* at 642–43.

Neither of these issues applies to the case at bar. With regard to the private interest factors, *Lony*'s analysis does not extend to this case because the District Court did not regard the private interest factors as standing in equipoise. Instead, it held that two of the "factor[s] counsel[ed] in favor of dismissal" and that one "factor strongly favor[ed] the case being heard in the BVI." *Trotter*, 2016 WL 1271025, at *6. With respect to the public interest factors, *Lony*'s holding does not apply because the District Court did not assume that foreign law applied. Rather, the District Court "[wa]s uncertain whether United States law or BVI law would apply" and, as a result, "refrain[ed] from attributing much weight to this particular factor." *Id.* at *7. Because the District Court reasonably balanced the private and public interest factors, we will affirm the District Court on this issue.

III.

For the foregoing reasons, we will affirm the District Court's order of dismissal.