**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

Nos. 20-3606, 21-1040 and 21-1041

————————

KRISTEN BEHRENS; GLORIA TREVISAN; FATEMEH AFRASEHABI;
SAKINA AFRASEHABI; AMAL AHMEDIN; AMAYA AHMEDIN;
MOHAMMAD ALHAJALI; ALEXANDRA ATALA; HUSNA BEGUM;
LEENA BELKADI; MALAK BELKADI; OMAR BELKADI; RAYMOND BERNARD;
VINCENT CHIEJINA; BASSEM CHOUCAIR; FATIMA CHOUCAIR;
MIERNA CHOUCAIR; NADIA CHOUCAIR; SIRRIA CHOUCAIR;
ZEINAB CHOUCAIR; JOSEPH DANIELS; JEREMIAH DEEN; ZAINAB DEEN;
ANTHONY DISSON; ESLAH ELGWAHRY; MARIEM ELGWAHRY;
FATHIA AHMED ELSANOUSI; ABDUL AZIZ EL-WAHABI;
FAOUZIA EL-WAHABI; MEHDI EL-WAHABI; NUR HUDA EL-WAHABI;
YASIN EL-WAHABI; LOGAN GOMES; MARCO GOTTARDI; BERKTI HAFTOM;
BIRUK HAFTOM; FARAH HAMDAN; MOHAMMED HAMID; MOHAMMED
HANIF; YAHYA HASHIM; FIRDAWS HASHIM; HASHIM KEDIR; YAQUB
HASHIM; FETHIA HASSAN; HANIA HASSAN; ABUFARS IBRAHIM; ISRA
IBRAHIM; RANIA IBRAHIM; AMNA MAHMUD IDRIS; ALI YAWAR JAFARI;
NURA JEMAL; HAMID KANI; KHADIJA KHALLOUFI; VICTORIA KING;
DEBORAH LAMPRELL; GARY MAUNDERS; MARY MENDY;
KAMRU MIAH; LIGAYA MOORE; DENIS MURPHY; MOHAMED AMIED NEDA;
ISSAC PAULOS; MARIA DEL PILAR BURTON; STEVEN POWER;
JESSICA URBANO RAMIREZ; KHADIJA SAYE; SHEILA SMITH;
MOHAMEDNUR TUCCU; ERNIE VITAL; MARJORIE VITAL;
AHMED ABDEL-RASOUL; MUSTAFA ABDU; SABAH ABDULLAH;
ABDUL-WAHAB ABDULHAMID; MARYAM ADAM, H/W; ABRAHAM ABEBE;
TURUFAT YILMA GIRMA; KAREN BOUD, ELSA AFEWORKI; MOHAMED
AHMED; RANDA AL-ARAS; FADUMO AHMED; KHALID AHMED; OMAR
ALHAJ ALI; MARIA DE FATIMA ALVES; MANUEL MIGUEL ALVES; INES
TAVARES ALVES; TIAGO ALVES; MERON ARAYA; ETHIOPIA ASSEFA; SIED
BAYAN; NADIA YOUSEF, H/W; JOHN BEADLE; SAFA HAMDAN; ELPIDIO
BONIFACIO; ROSITA BONIFACIO; NICHOLAS BURTON; VIRGILIO CASTRO;
ANN CHANCE; LEE CHAPMAN; CHIA-YUAN NAOMI LI, H/W; SALAH EDDINE
CHEBIOUNI; ZAK CHEBIOUNI; FUNG-HEE CHENUNG; CHIN-HSUAN LYDIA
LIAO; JOSE COSTA COTELO; DORINDA SUAREZ CHANS; KATARZYNA
DABROWSKA; ROY SMITH; EDWARD DAFFARN; SAM DANIELS; HIWOT

DAGNACHEW; WINTOM TEMESGEN; ALEMISHET DEMISSIE; PETRA DOULOVA; LEROY AUGUSTUS; BELLAL EL-GUENUNI; RABIA YAHYA; HANAN WAHABI; MOUNA EL-OGBANI; YOUSSEF KHALLOUD; NATASHA ELCOCK; YEHUALASHET ENYEW; RICHARD FLETCHER; HIME GASHAW; HELEN GEBREMESKEL; CLARITA GHAVIMI; MARCIO GOMES; ANDREIA PERESTRELO; CHARMAINE GREENRIDGE; DANIEL GRIFFIN; SHARON HALEY; LINA HAMIDE; WILLIAM THOMSON; MARY HANLEY; CATHERINE HANLEY; AVNI HAXHISEFA; ADRIANA ZYMBERAJ; ALK HAXHISEFA; MAKREM HARZI; RAWDA SAID; ABDIRAHMAN SALAH HIRSI; SUHAYB SALAH HIRSI; VAN QUANG HO; HOANG KHANH QUANG; EDUARDO IGNACIO; ERLINDA IGNACIO; WESLEY IGNACIO; MADYLYN IGNACIO; NADIA JAFARI; FATIMA JAFARI; MARIA JAFARI; JOSEPH JOHN; CORRINE JONES; BEHAILU GOBENA KEBEDE; FARSHID KAFICHERAGHI; MILAD KAREEM; BETTY KASOTE; MESROB KASSEMDJIAN; SHARON LACI; MONICA LOKKO; DAVID LEWIS; OCTINIA LEWIS; MIRAN LOVSIN; SUZANA LOVSIN; BRANISLAV LUKIC; HANIFE MACIT; SENER MACIT; MOHAMMED RASOUL; MUNIRA MAHMUD; SEPIDEH MINAEI MOGHADDAM; AMINA MOHAMED; ALISON MOSES; NAGAWA PROSSY NALUKWAGO; RESHAD NAQSHBANDI; FARHAD SHEKEB NEDA; SHAKILA FLORA NEDA; EMMA O'CONNOR; KERRY O'HARA; GITARA PAHLAVANI; MICHAEL PARAMASIVAN; CHIRAAG PATEL; SHANTILAL PATEL; KIRAN PATEL; ELISA RABAYA; AZIZA RAIHANI; RAMIRO URBANO RODRIGUEZ; ADRIANA RAMIREZ; RHEA ROJO; ANTONIO RONCOLATO; REBECCA ROSS; REBIN SABIR; GENET SHAWO; PAULOS TEKLE; ANTHONY SMITH; ELIZABETH SOBIESZCZAK; MICHAEL SOBIESZCZAK; FLORENTYNA SOBIESCZAK; ADAM SUPAREOGSANOND; CHALALAI SUPAROEKSANOND; WAEWTA SUPAREOGSANOND; RITA TANKARIAN; LUKE TOWNER; MARIKO TOYOSHIMA-LEWIS; CARMEN VIEIRO; JOSE VIEIRO; YOHANNES TESFAY; MERON MEKONNEN;

Appellants in No. 20-3606

v.

ARCONIC, INC.; ALCOA, INC.; ARCONIC ARCHITECTURAL PRODUCTS, LLC; WHIRLPOOL CORPORATION; JOHN DOES (1-99); ABC CORPORATIONS (1-99); XYZ CORPORATIONS (1-99);

Arconic, Inc. and Arconic Architectural Products, LLC, Appellants in No. 21-1040

Whirlpool Corporation, Appellant in No. 21-1041

2

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-19-cv-02664)
District Judge: Honorable Michael M. Baylson

_____

Argued on June 7, 2022

Before: AMBRO, RENDELL, and FUENTES, <u>Circuit Judges</u>

(Opinion Filed: July 8, 2022)

Mark Abramowitz
Mark A. DiCello
DiCello Levitt Gutzler
7556 Mentor Avenue
Mentor, OH 44060

Adam J. Levitt
John E. Tangren
DiCello Levitt Gutzler
Ten North Dearborn Street
6th Floor
Chicago, IL 60602

Jeffrey P. Goodman **[Argued]**
Robert J. Mongeluzzi
Saltz Mongeluzzi Barrett & Bendesky
1650 Market Street
One Liberty Place, 52nd Floor
Philadelphia, PA 19103

Counsel for Appellant/Cross-Appellee Kristen Behrens

Ilana H. Eisenstein
Joseph Kernen
Timothy P. Pfenninger
Nancy S. Rappaport
DLA Piper
1650 Market Street
One Liberty Place, Suite 5000
Philadelphia, PA 19103

Jason C. Murray **[Argued]**
Bartlit Beck
1801 Wewatta Street
Suite 1200
Denver, CO 80202

   Counsel for Appellees/Cross-Appellants Arconic Inc. and Arconic
   Architectural Products LLC

Christopher S. D'Angelo
Montgomery McCracken Walker & Rhoads
1735 Market Street
21st Floor
Philadelphia, PA 19103

Stephen J. Pearson
Jones Day
250 Vesey Street
13th Floor
New York, NY 10281

Matthew E. Papez **[Argued]**
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001

   Counsel for Appellee/Cross-Appellant Whirlpool Corporation

---

OPINION[*]

---

**AMBRO**, <u>Circuit Judge</u>

In 2017, the Grenfell Tower—a London high-rise apartment building—caught fire,

killing 72 people and injuring hundreds more. Many civil suits relating to the tragedy are

---

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

currently pending in the United Kingdom. But several estates and survivors also brought the products liability action before us that seeks to recover from three US-based corporate defendants. Plaintiffs allege these entities are responsible for the fridge-freezer that started the fire and certain combustible materials used on the Tower's exterior, the latter of which allowed flames to engulf the building with alarming speed.

The District Court, in a thorough and well-reasoned opinion, held that Plaintiffs' claims should proceed in the United Kingdom and dismissed the action for being in an inconvenient forum (called in Latin *forum non conveniens*). It attached a novel condition to its dismissal: if the UK court concludes that Pennsylvania law applies to damages and that Defendants may be liable for punitive damages, that court may send the case back to the United States for damages-only proceedings. Plaintiffs appeal the dismissal and Defendants cross-appeal to challenge the propriety of leaving an avenue for the action to return to this forum. We affirm the Court's *forum non conveniens* judgment but agree with Defendants that the dismissal condition should be stricken.[1]

I.

Early on the morning of June 14, 2017, a fridge-freezer ignited in Flat 16 of the Grenfell Tower. The fire reached the Tower's exterior façade and soon the entire building was in flames. Seventy-two people died and hundreds more were injured, making it "Britain's deadliest residential fire since World War II." J.A. 892.

---

[1] Because we affirm as to the *forum non conveniens* dismissal, we deny as moot Defendant Whirlpool's conditional cross-appeal of the District Court's personal jurisdiction determination.

5

Then-Prime Minister Theresa May launched a public inquiry to investigate the tragedy. It was divided into two phases: the first, completed in October 2019, investigated how the fire started and spread throughout the building. The second, still ongoing, is investigating the tragedy's underlying causes. Concurrent with the public inquiry, the London Metropolitan Police Service launched a criminal investigation that has collected substantial evidence relating to the fire.

Thus far, the public inquiry has revealed the following: initially built in 1974, the Tower was refurbished from 2012 to 2016 with a new exterior cladding system. That system consisted of insulation boards attached to the outside of the building and protected from the weather by "Reynobond 55 PE" rainscreen panels. Those panels consisted of two aluminum sheets bonded together by a layer of highly flammable polyethylene. In addition to other combustible materials used in the refurbishment, the Reynobond panels were a primary reason why the fire spread so rapidly around the Tower's exterior: their polyethylene cores acted as fuel for the flames.

In June 2019, 245 UK residents and their estates filed this action in Pennsylvania state court alleging claims for strict products liability and wrongful death stemming from the fire. They sued three companies: Arconic Inc., Arconic Architectural Products ("AAP"), and Whirlpool.[2] Arconic is a Pennsylvania-based corporation. AAP is a

---

[2] The complaint initially named Saint-Gobain Corporation as a defendant (an affiliate of which—Celotex—was allegedly responsible for manufacturing combustible insulation used in the Tower's cladding system), but Plaintiffs later dismissed it via stipulation. Alcoa Inc. was also named as a defendant, but it is apparently the same entity as Arconic Inc. *See* Dist. Ct. Dkt. 49-1 at 3 n.4 (describing Arconic's origins). Although the complaint has not been amended to reflect this fact, the parties make no reference to Alcoa on appeal.

Georgia-based Arconic subsidiary that manufactures Reynobond panels. It did not, however, manufacture the Reynobond panels used in the Tower refurbishment. Those panels were instead manufactured by an Arconic subsidiary based in France. The French subsidiary was not named as a defendant in this lawsuit.

Plaintiffs assert strict liability claims against the Arconic Defendants based on the allegedly defective and dangerous design of the Reynobond panels used on the Tower. They allege these Defendants are both directly liable (as Arconic was purportedly aware prior to the fire that the Reynobond product used in the refurbishment was unsafe for high-rise buildings and yet refused to develop a safer version) and indirectly liable for the French subsidiary's conduct under theories of agency and corporate control. They also seek punitive damages.

Whirlpool is a Delaware corporation headquartered in Michigan. In 2014, Whirlpool acquired Indesit, the company that manufactured and sold the fridge-freezer alleged to be the source of the Tower fire. Plaintiffs bring claims against Whirlpool based on the allegedly defective and dangerous design of the Indesit fridge-freezer and assert the company is both directly liable and indirectly liable as Indesit's successor-in-interest.

Defendants removed the suit to federal court and moved to dismiss. Most relevant here, they invoked the *forum non conveniens* doctrine to argue that the litigation was better pursued in England than in Pennsylvania. At Plaintiffs' request, the Court permitted discovery on that issue. At the close of discovery, it granted Defendants' motion and dismissed the case.

The Court attached several conditions to the dismissal, one of which—condition

7

2(h)—is critical to this appeal:

> If the UK court determines that Pennsylvania law (or the law of another state in the United States) applies to damages and that one or both Defendants may be liable for punitive damages, but decides to grant dismissal of the damages phase without prejudice in the UK for determination in the US, Plaintiffs may reinstate this action in this Court.

J.A. 992. Both sides then moved for reconsideration, and both motions were denied. Plaintiffs now appeal the Court's *forum non conveniens* dismissal, and Defendants cross-appeal challenging condition 2(h).

## II.[3]

The *forum non conveniens* doctrine permits a district court to "dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). A court's analysis proceeds in three steps. First, it must determine whether there is an adequate alternate forum to hear the plaintiff's claims. *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 442 (3d Cir. 2017). Second, it must decide the degree of deference due to the plaintiff's forum choice. *Id.* And finally, it must "balance the relevant private and public interest factors" to determine whether it would be more appropriate and convenient for the parties to proceed in the alternate forum. *Id.* (quoting *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010)); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947) (providing a non-exhaustive list of private and public interest factors).

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1332(a) and (d). We have jurisdiction under 28 U.S.C. § 1291.

8

Applying this framework, the District Court concluded that the United Kingdom was an adequate alternate forum, that Plaintiffs' decision to bring this action in Pennsylvania was entitled only to moderate deference, and that the private and public interest factors on balance weighed in favor of dismissal. Specifically, it held three private interest factors weighed heavily for sending this case overseas: (1) ease of access to sources of proof, given the amount of potentially relevant UK-based evidence; (2) the large number of third-party witnesses located in the United Kingdom, most of whom could not be compelled to attend trial in Pennsylvania; and (3) the inability to implead UK-based third parties who may bear responsibility for the tragedy. These and other factors—including judicial economy and the United Kingdom's interest in resolving the claims of its residents stemming from the Tower tragedy—prompted the Court to determine that Plaintiffs' claims were better heard in a UK forum.

We may reverse that determination "only when there has been a clear abuse of discretion," *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)), and we see no abuse of discretion here, *see Piper*, 454 U.S. at 257–61 (affirming district court's decision to dismiss in favor of a UK forum, where the estates of several UK residents brought personal injury claims against US-based companies arising out of a plane crash in Scotland).

Plaintiffs offer a handful of arguments to the contrary, none of which persuades. They contend their decision to file in Pennsylvania was entitled to great deference, given

9

the large amount of discovery that has already taken place here.[4]  But they base this argument on our decision in *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604 (3d Cir. 1991), which is distinguishable.  The parties there had engaged in nearly six months of merits discovery and had a trial date prior to the court dismissing the case for an inconvenient forum.  *Id.* at 607, 613–14.  Given the advanced stage of those proceedings, we held that it erred by failing to consider "the extent of the activities on the merits already undertaken" when deciding how much deference to give the plaintiff's forum choice.  *Id.* at 608, 613.  Here, however, the District Court did factor the stage of the proceedings into its analysis, holding that while discovery had been substantial, it was limited to preliminary issues concerning the convenience of the venue.  No trial date had been set, and Plaintiffs confirmed during the discovery process that their requests were "specific and narrowly tailored" toward "an expedient determination of the convenience and appropriateness of [their] chosen forum."  J.A. 529–30.  Although the Court's *forum non conveniens* inquiry necessarily required some engagement with the merits of the dispute, *see Lony*, 935 F.2d at 614 (noting that, "in assessing a *forum non conveniens* motion, the district court generally becomes entangled in the merits of the underlying dispute" (internal quotation marks and citation omitted)), it reasonably concluded that the parties' venue discovery

---

[4] Plaintiffs also argue that their forum choice was entitled to more deference because it is Arconic Inc.'s home forum.  The District Court held that this fact did not amount to a "considerable" showing of convenience given the "overwhelming majority" of witnesses and evidence located in the United Kingdom.  J.A. 937.  This conclusion is consistent with *forum non conveniens* case law, which explains that "a foreign plaintiff's choice [of a US forum] deserves less deference" because it is "much less reasonable" to assume this choice is convenient.  *Piper*, 454 U.S. at 255–56.

failed to tip the deference scales.

Next, Plaintiffs argue that Defendants' inability to implead UK-based third parties should not have weighed in favor of dismissal. The District Court explained that if a Defendant were found liable in the United States, it would need to pursue its contribution claims in the United Kingdom, where other potentially negligent third parties—including the property owners, architects, and contractors involved in refurbishing the Tower—are located. It held that "[r]esolving these claims in the courts of one country is much more efficient for the judicial systems of the [United States] and the [United Kingdom], is more convenient for the parties, and is fairer to Defendants." J.A. 956. This was a permissible determination. *See Piper*, 454 U.S. at 259. Indeed, Plaintiffs cite no authority suggesting otherwise. Nor do they contest that English law would allow for Defendants' contribution claims to be tried together with Plaintiffs' claims, which thus reinforces the Court's conclusion that proceeding in the United Kingdom would be more convenient than proceeding in the United States.

Finally, Plaintiffs contend the District Court erred in holding that the UK-based physical evidence—which the Court observed consisted of approximately 14,500 samples collected from the Tower by the London police—weighed in favor of dismissal. They assert that most of the evidence and witnesses relevant to their strict liability claims are in the United States or France, not the United Kingdom. But, as the District Court explained, when assessing the parties' access to proof, the focus is not only on evidence relevant to the plaintiff's claims but also on evidence relevant to "any potential defenses to the action." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988). Because the UK-based physical

11

evidence is relevant to Defendants' argument that Plaintiffs' injuries were caused not by defects in their products but rather by faulty design and construction during the Tower refurbishment, the Court properly factored this evidence into its *forum non conveniens* analysis.[5]

## III.

Seeing no error in the District Court's *forum non conveniens* analysis, we must consider Defendants' challenge to dismissal condition 2(h), which allows damages proceedings to be reinstated in the United States if the UK court (1) finds Defendants liable; (2) determines that Pennsylvania law (or that of some other state) applies to damages; (3) determines that punitive damages may be available under that law; and (4) decides the damages case should be heard in the United States.

While we review these dismissal conditions, like the *forum non conveniens* determination itself, for abuse of discretion, *see, e.g.*, *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1234–35 (9th Cir. 2011), there is precious little authority on what abuses a court's discretion in this context. Still, we note that condition 2(h) does not operate like any other dismissal condition currently authorized by the case law. Courts have, for instance, approved conditions that serve to ensure the adequacy of the new forum,

---

[5] Plaintiffs also contend that the physical evidence should have been viewed as inconsequential because, no matter where the litigation is pending, experts will need to travel to the evidence. That may be true, but it does not detract from the District Court's concern that an English court will not allow the UK-based physical evidence to be presented at a US trial, whereas parties in a UK proceeding would be able to access the relevant physical evidence once any criminal proceedings concerning the Tower fire are over.

such as by removing procedural barriers that could prevent the plaintiffs from being heard, *see id.* at 1235 (holding that the district court should have conditioned its *forum non conveniens* dismissal on the defendant's agreement to waive statute of limitations defenses in the foreign forum), or allowing the suit to return should the new forum reject it on jurisdictional grounds, *see Gutierrez v. Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1032 (9th Cir. 2011). Courts have also acknowledged the propriety of conditions that make the new forum a more convenient place for plaintiffs to litigate, noting that dismissals may be conditioned on the defendant's agreement to make evidence available in the alternate forum, *see Piper*, 454 U.S. at 257 n.25, and even upholding a condition requiring the defendant not to contest liability in the new forum, *Pain v. United Techs. Corp*, 637 F.2d 775, 785 (D.C. Cir. 1980).

But condition 2(h) is notably distinct: rather than ensure that a UK forum is available or convenient, it allows the damages phase of the proceedings to return to the District Court, which it has already held is not the best place for Plaintiffs' case to proceed. It does so, moreover, without requiring any finding that the UK court cannot adequately determine Plaintiffs' damages. That is problematic, because returning the damages proceedings to this forum would entail many of the same inconveniences and inefficiencies prompting the Court to order *forum non conveniens* dismissal in the first place, with the only discernable benefit being that an American jury—rather than a UK court—would get to decide on a damages award.

Plaintiffs submit that condition 2(h) is necessary to protect both their punitive damages case and the United States' interest in punishing US-based corporations that

13

engage in punitive conduct. But that condition can only go into effect if the UK court first determines that Pennsylvania (or some other state) law applies to damages and that Defendants may be liable for punitive damages (which are not available under English law). And if that court, applying US state law, decides that punitive damages may be available, there is no reason to think it could not determine an appropriate award itself, thereby preserving any interest Plaintiffs and this country may have in ensuring Defendants are punished for their conduct.[6]

If the UK court wishes to decline jurisdiction over the damages proceedings on its own accord, so be it. While we think that unlikely to occur, if it does, the dismissal order entered by the District Court contains another condition that would allow the action to come back to the United States. *See* J.A. 991 ("Defendants agree that Plaintiffs may reinstate this action in this Court if the English courts reject, for jurisdictional reasons, the subject matter of Plaintiffs' claims such that those courts are not an available alternative forum for Plaintiffs."). We do not, however, endorse a dismissal condition that expressly opens an avenue for the action to return to the United States when the inconvenience and efficiency costs of that return outweigh any potential benefit to the parties.[7]

---

[6] In their motion for reconsideration, Plaintiffs asked the District Court to revise condition 2(h) to allow for a trial on punitive damages to proceed in the United States now rather than at the end of the UK liability proceedings. They offered no authority to support that request, and the Court did not abuse its discretion in denying it.

[7] Judge Rendell would conclude that condition 2(h) is a permissible, albeit unusual, return-jurisdiction provision, and that, in any event, the District Court, which conceded that this condition was novel, did not abuse its discretion in imposing it.

14

*     *     *

The effects of a tragedy like the Grenfell Tower fire will often be felt worldwide. Still, the District Court did not abuse its discretion in determining that this action, which involves the claims of UK residents arising from a UK-based disaster, belongs in the United Kingdom. We therefore affirm its superbly reasoned judgment as to the dismissal and reverse only as to its imposition of condition 2(h), which we hold exceeds the bounds of a permissible *forum non conveniens* dismissal condition.